BOARD OF ASSESSMENT APPEALS,
STATE OF COLORADO, and Property
Tax Administrator, State of Colorado,
Petitioners,

v.

VALLEY COUNTRY CLUB,
Respondent.

No. 89SC204.

Supreme Court of Colorado,
En Banc.

May 21, 1990.

As Modified on Denial of Rehearing
June 18, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Bradley J. Holmes, Asst. Atty. Gen., Denver, for petitioners.

Fairfield and Woods, P.C., Rocco A. Dodson and Paul V. Franke, Denver, for respondent.

Justice ROVIRA delivered the Opinion of the Court.

The Board of Assessment Appeals (Board) and the Property Tax Administrator (Administrator) challenge the court of appeals determination in *Valley Country Club v. Board of Assessment Appeals*, 778 P.2d 285 (Colo.App.1989), that the Board improperly conducted a de novo review in a taxpayer's appeal from the Administrator's order. Because we find that the Board was not precluded from conducting a de novo review, we reverse the court of appeals and remand with directions to reinstate the Board's order.

I

The Valley Country Club (Valley) owns real estate in Arapahoe County, Colorado. In 1983, this property was valued at an amount greater than the previous year. Whether a notice of increased valuation was sent to Valley's mortgagee in Texas, and whether Valley ever received such notice, are disputed issues. In any event, Valley did not timely protest its valuation in 1983. In 1984, however, Valley's protest led to the finding that the property was overvalued, and its 1984 taxes, which were calculated from the increased valuation, were reduced.

In June 1985, Valley filed a Petition for Abatement or Refund of its 1983 taxes

with the Arapahoe County Board of County Commissioners (Commission), based on the overvaluation of the property and the lack of notice. After a hearing, the Commission ruled that Valley's 1983 taxes were "erroneously or illegally levied," based on the factual finding that Valley did not receive its notice of valuation for 1983. Accordingly, Valley was granted an abatement.

Pursuant to statute, the Commission submitted an application for abatement to the Administrator for review. The Administrator denied the application on the grounds that the notice of valuation was presumptively received, the tax was not illegal, and Valley had waived its administrative remedies. Valley then appealed to the Board for review of the Administrator's decision. After conducting a de novo hearing, the Board agreed that Valley was presumed to have received the notice of valuation, the tax was not erroneous or illegal, and the valuation should have been appealed pursuant to section 39–5–122, 16B C.R.S. (1982).

On appeal, the district court held that although the Board may conduct a de novo review of cases properly before it, in this instance, the case was improperly before the Board. The court reasoned that because the Administrator's role is limited to ensuring that the application is "in proper form and recommended in conformity with the law," she went beyond her authority in redetermining the issues. Because the application should never have been rejected by the Administrator, the case should not have been heard by the Board.

The court of appeals affirmed the district court's order on a different ground. It held that the Board was limited to an analysis of the Administrator's order, and that a de novo review was beyond the Board's authority. The court of appeals also held that the Administrator exceeded her authority in reversing the Commission's finding of fact.

We granted certiorari to determine whether the Board was empowered to con-

duct a de novo review of Valley's appeal from the Administrator's decision.

## II

Property taxes are assessed based on the value of real and personal property. Whenever a taxpayer's land or improvements are valued at an amount greater than the previous year, the county assessor must mail a notice of increased valuation by a certain date. § 39–5–121(1), 16B C.R.S. (1982). If the taxpayer believes that the valuation is improper, he must present a protest to the assessor within a certain period. § 39–5–122(2), 16B C.R.S. (1982). A protest which has been denied may be appealed to the county board of equalization.[1] § 39–5–122(3), 16B C.R.S. (1982).

When a taxpayer does not acquire knowledge of an allegedly excessive assessment until after the protest period, relief may be afforded through abatement of the taxes. *Modular Communities, Inc. v. McKnight*, 191 Colo. 101, 550 P.2d 866 (1976); § 39–10–114, 16B C.R.S. (1982). Initial application is made to the appropriate board of county commissioners. If the commissioners recommend an abatement or refund after a hearing, an application must be submitted to the Administrator for approval. § 39–1–113, 16B C.R.S. (1982). The Administrator is required to review the application to determine if it is "in proper form and recommended in conformity with the law." § 39–2–116, 16B C.R.S. (1982). If the Administrator disapproves the application, such disapproval may be appealed to the Board. This case concerns the scope of the Board's review when the second method of protest is utilized.

Section 39–2–125, 16B C.R.S. (1982), which sets out the duties of the Board, provides in pertinent part:

(1) The board shall perform the following duties, such performance to be in

1. In all counties except the City and County of Denver, the board of equalization is comprised of the board of county commissioners. Composition of the board of equalization in the City and County of Denver is determined by reference to its charter. § 39–8–101, 16B C.R.S. (1982).

accordance with the applicable provisions of article 4 of title 24, C.R.S. 1973:[2]

(a) Adopt procedures of practice before and procedures of review by the board;

(b)(I) Hear appeals from orders and decisions of the property tax administrator filed not later than thirty days after the entry of any such order or decision.

(II) Such hearings shall include evidence as to the rationale of such order or decision and the detailed data in support thereof.

Despite the statutory direction that the Board promulgate procedures of practice and review, Valley contends that such procedures are necessarily circumscribed by section 39–2–125(1)(b)(II), which purportedly limits the Board's review of the Administrator's order to the rationale of the order and the evidence supporting such order. We disagree that the Board's scope of review is so limited.

The language of the statute supports a broader interpretation of the Board's scope of review. The statute states that the hearing shall "include" evidence as to the rationale of the Administrator's decision and the support underlying such decision. We have held that the term "include" is ordinarily "a word of extension or enlargement," rather than a term of limitation. *Lyman v. Town of Bow Mar*, 188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975). The use of this term indicates that the legislature did not intend to limit the Board's review so narrowly.

We note further that the legislature authorized the Board to "conduct hearings, administer oaths, examine witnesses, receive evidence, and issue subpoenas...." § 39–2–127(2), 16B C.R.S. (1982). Thus, the Board has the power to conduct an evidentiary hearing in the furtherance of its duties.

■ Administrative regulations promulgated by the Board also support the conclusion that it is authorized to conduct a de novo hearing on the merits. 8 C.C.R.

§ 1301–1 (1988), sets out the procedures to be employed by the Board in reviewing decisions by an assessor, a county board of commissioners, a county board of equalization, or the Administrator. For example, Rule 17 provides that:

Whenever the record in any case includes a stipulation or deposition, the case may be submitted to the Board for decision on the record if all parties agree to this procedure. In all other cases, the Board shall determine the method of proceedings whether by hearing or review of the record as circumstances and time require.

Moreover, Rule 14 provides that "[e]very party to the proceeding shall have the right to present his case or defense by oral and documentary evidence." Finally, Rule 11 provides for the exchange of documentary evidence prior to a hearing, stating:

All parties shall exchange all documentation (supply exhibits and a list of witnesses) at least ten days prior to the hearing. Three days prior to the hearing all reply documentation ... must be exchanged with all parties (i.e. Four copies to the Board of Assessment Appeals, one copy to the Petitioner and appropriate copies to the Respondent—supply copies to all parties involved in your specific appeal: county board of equalization/county board of commissioners/Property Tax Administrator/county attorney/assistant attorney general, and county assessor).

(Emphasis omitted.) It is clear that these rules contemplate an evidentiary hearing in every case, including an appeal from the Administrator's decision. The rules make no distinction between the various types of appeals and nothing limits the Board's review of a decision to the record. In fact, the Board has manifested a contrary interpretation in its published guidelines to litigants, in which it states that "[a]ll cases before the Board are *de novo* hearings." Under these circumstances, it is appropriate to give deference to the contemporaneous construction of the statute by the agency charged with its administration. *Urbish v. Lamm*, 761 P.2d 756 (Colo.1988); *Lucero*

---

**2.** Sections 24–4–101 to –108, 10A C.R.S. (1988), constitute the State Administrative Procedure Act. The Act provides those procedures to be used by an administrative agency when rule-making, licensing and conducting hearings.

*v. Climax Molybdenum Co.*, 732 P.2d 642 (Colo.1987); *Colorado Gen. Assembly v. Lamm*, 700 P.2d 508 (Colo.1985); *Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985). Such deference is particularly appropriate where, as here, the legislature has amended the enabling statute on several occasions during the period in which the rules have been in effect, but has not inserted a provision restricting the Board's scope of review.[3] *Schlagel v. Hoelsken*, 162 Colo. 142, 425 P.2d 39 (1967); *see also First Nat'l Bank of Greeley v. United States*, 86 F.2d 938 (10th Cir.1936); *Music City, Inc. v. Duncan's Estate*, 185 Colo. 245, 523 P.2d 983 (1974).

The court of appeals reasoned that a de novo review would, in effect, "afford[ ] the tax assessor an appeal from the Commissioners' fact finding which is not permitted under the terms of § 39–1–113." *Valley Country Club*, 778 P.2d at 288. We disagree. Providing for de novo review from the Administrator's decision does not vest an assessor with the right to appeal an adverse decision by the Commission. The assessor may present additional evidence at a hearing before the Board only if the taxpayer brings an appeal. Because the assessor's appellate rights are not expanded by allowing the Board to conduct a de novo review, the intent of the legislature to limit the right of appeal is not contravened.

The judgment of the court of appeals is reversed, and the case is remanded to the court of appeals with directions to reinstate the Board's decision.[4]

**3.** Rule 14, which grants a party the right to present oral and documentary evidence, and Rule 17, which gives the parties the option of agreeing to a review on the record under certain circumstances, but which leaves the choice of procedure to the Board in all other cases, were promulgated in their present form in 1974. Since then, the General Assembly has amended section 39–2–125, defining the Board's duties, on eight occasions. On this basis, we can only conclude that the legislature agrees with the Board's interpretation of its scope of review.

**4.** Both the trial court and the court of appeals found that the Administrator exceeded her authority by reversing the Commission's factual findings. This conclusion, however, does not affect the outcome of the case. After a de novo hearing, the Board decided that Valley was presumed to have received notice of the increased valuation. This finding alleviates the Administrator's error, if any, in reversing the Commission's factual determination because the Board's decision was made after an independent factual investigation. Accordingly, the second part of the court of appeals opinion does not preclude us from reinstating the Board's decision.