**UTAH MOTEL ASSOCIATES,
Petitioner–Appellant,**

*v.*

**DENVER COUNTY BOARD OF COMMISSIONERS, and Board of Assessment Appeals of the State of Colorado, Respondents–Appellees.**

**No. 91CA1910.**

Colorado Court of Appeals,
Div. III.

Nov. 19, 1992.

Rehearing Denied Dec. 17, 1992.

Holme, Roberts, & Owen, Douglas A. Pluss, Stephanie M. Tuthill, Denver, for petitioner-appellant.

Daniel E. Muse, City Atty., Eugene J. Kottenstette, Asst. City Atty., Denver, for respondent-appellee Denver County Bd. of Com'rs.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for respondent-appellee Bd. of Assessment Appeals.

Opinion by Judge ROTHENBERG.

Petitioner, Utah Motel Associates (taxpayer), appeals from the order of the Colorado Board of Assessment Appeals (BAA) dismissing its petitions for abatement of property taxes based upon a finding that taxpayer lacked standing. Because we hold that a property owner who did not own the property at the time of the assessment of real estate taxes, but thereafter purchased the property and owned it at the time the tax was levied, does have standing to maintain an abatement action, we reverse and remand with directions.

On May 26, 1988, taxpayer purchased a hotel and adjacent parking lot. Seller gave taxpayer a pro-rated credit for the 1988 taxes which had been assessed on January 1, 1988.

On September 7, 1989, taxpayer filed petitions for abatement of the 1988 property taxes with the Board of County Commissioners (BOCC). The BOCC denied taxpayer's petitions.

Taxpayer appealed the denial of its petitions to the BAA. At the hearing, the BOCC moved to dismiss the petitions, contending that taxpayer did not have stand-

ing to seek an abatement since it did not own the property on the assessment date. The BAA granted the BOCC's motion to dismiss, finding that since taxpayer was not the property owner on the assessment date, taxpayer's alleged injury was not to a legally protected right or interest.

## I.

Initially, we address the BOCC's contention that the BAA lacked jurisdiction to consider taxpayer's petitions because taxpayer failed to file them in a timely manner. We conclude that resolution of this issue involves a determination of fact by the trier of fact, and accordingly, we remand for a hearing on this issue.

Sections 39–10–114.5 and 39–2–125(1)(f), C.R.S. (1992 Cum.Supp.) allow a petitioner to appeal the BOCC's denial of a petition for abatement of taxes within thirty days after the entry of the BOCC's decision.

Here, the BOCC contends that its decision was "entered" on July 20, 1990, the date when it mailed two letters to taxpayer denying the petitions for abatement. According to the BOCC, taxpayer's petitions were untimely because they were not filed within thirty days of July 20th.

Taxpayer contends that it did not receive the BOCC's letters and was unaware of the BOCC's decision until it received the notices by telecopier on September 10, 1990.

Sections 39–10–114.5 and 39–2–125(1)(f) do not define date of entry. However, in *BOP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo.App. 1984), this court held that the "date of entry" of a decision of the county board of equalization is the date on which its resolutions are *executed and mailed* to the taxpayers.

■ Although, here, taxpayer filed its petitions with the board of county commissioners rather than the board of equalization, we are persuaded that the rationale of *BOP Industries* should nevertheless be applied. We therefore hold that the date of entry of a decision by the county board of equalization is the date on which the BOCC mails its decision to the taxpayer.

Here, the date of entry of the BOCC's decision was July 20, 1990.

■ We also conclude that the mailing of the notice is insufficient to start the thirty-day time period if, as here, taxpayer denies receiving it.

■ A letter properly mailed is presumed received by its addressee. However, when an addressee denies receiving a letter, the binding effect of the presumption ends, and the trier of fact is left to decide the issue based upon the weight of the evidence. *Denver v. East Jefferson County Sanitation District,* 771 P.2d 16 (Colo.App.1988). *See generally* 1A J. Wigmore, *Evidence* § 95 (Tillers rev.1983). *Cf. Valley Country Club v. Board of Assessment Appeals,* 778 P.2d 285 (Colo.App. 1989), *rev'd on other grounds,* 792 P.2d 299 (Colo.1990) (regardless of whether notice of increased tax valuation was *mailed,* taxpayer's failure to *receive* it entitled him to apply for an abatement or refund).

■ At the hearing before the BAA, neither party introduced testimony concerning taxpayer's receipt of the letters, and the BAA did not make any findings of fact on this issue. Thus, the matter must be remanded to the BAA for a determination of whether taxpayer received the denial letters.

On such remand, if the BAA is convinced by a preponderance of the evidence that taxpayer did not receive the notice and was unaware of the BOCC's decision until September 10, 1990, then the BAA must conclude that the thirty-day time period did not begin to run until September 10, 1990, and taxpayer's appeal was timely. If the taxpayer fails to demonstrate non-receipt of the letters, then the petitions will stand as dismissed, subject only to taxpayer's right to appeal that holding.

## II.

Because the BAA may find the taxpayer's petition was timely filed, both parties have requested this court also to consider taxpayer's contention that the BAA erred

in dismissing its petitions for lack of standing.

The question of standing concerns whether a complaining party has asserted a legal basis on which a claim can be predicated. Resolution of the standing issue involves two considerations: whether the complaining party has alleged an actual injury from the challenged action; and whether the injury is to a legally protected or cognizable interest as contemplated by statutory or constitutional provisions. *See O'Bryant v. Public Utilities Commission,* 778 P.2d 648 (Colo.1989); *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977).

A complaining party may satisfy the injury in fact requirement by demonstrating that the action complained of has caused or has threatened to cause injury. *Maurer v. Young Life,* 779 P.2d 1317 (Colo. 1989). "The injury must be sufficiently direct and palpable to allow a court to say with fair assurance that there is an actual controversy proper for judicial resolution." *O'Bryant v. Public Utilities Commission, supra,* 778 P.2d at 653.

In determining whether a complaining party has suffered an injury in fact, a court must accept all allegations of material fact as true. *See East Grand County School District No. 2 v. Town of Winter Park,* 739 P.2d 862 (Colo.App.1987).

Here, taxpayer claims that the overvaluation creates an economic injury because: (1) the tax lien on the hotel resulting from the overvaluation diminishes the hotel's fair market value; (2) taxpayer will suffer a direct, out-of-pocket loss if it pays the taxes; and (3) taxpayer will lose its ownership interest if it fails to redeem the hotel by paying the taxes and accrued interest.

We conclude that these asserted economic injuries are sufficiently "direct and palpable" to allow this court to say there is an actual controversy proper for judicial resolution. *See O'Bryant v. Public Utilities Commission, supra.* Thus, taxpayer has sufficiently asserted an injury in fact.

We also conclude that taxpayer has sufficiently demonstrated injury to a legally protected right.

A complaining party may show injuries to a legally protected right by demonstrating that the harm allegedly suffered is protected by a constitutional or statutory provision, or by a judicially created rule of law that entitles the complaining party to some form of judicial relief. *See Board of County Commissioners v. Bowen/Edwards Associates, Inc.,* 830 P.2d 1045 (Colo.1992).

Colo.Sess.Laws 1989, ch. 324, § 39-10-114(1)(a)(I)(A) at 1459-60, in effect at the time taxpayer filed its petition with the BOCC, provided:

If taxes have been levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, or clerical error, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes in the manner provided by law....

Although § 39-10-114(1)(a)(I)(A) does not specifically state that a taxpayer could seek relief under the statute for an alleged "overvaluation" of its property, in *Portofino Corp. v. Board of Assessment Appeals,* 820 P.2d 1157, 1160 (Colo.App.1991), this court specifically held that:

[I]n amending § 39-10-114 in 1988, the General Assembly intended to provide *taxpayers* the opportunity to utilize the abatement and refund provisions for the purpose of challenging an overvaluation. (emphasis added)

Here, the BOCC contends that taxpayer lacked standing to file for an abatement under § 39-10-114 because it did not pay the disputed taxes and, therefore, cannot be a "taxpayer." The BOCC's second argument is that the General Assembly intended the abatement procedures to benefit only owners of property on the assessment date. We reject this interpretation of the statute.

In interpreting a statute, a reviewing court must presume that the General Assembly intended a just and reason-

able result and must seek to avoid an interpretation that leads to an absurd result. *People v. Pflugbeil,* 834 P.2d 843 (Colo. App.1992). In addition, we are guided by the principle that "the taxing power and taxing acts are construed strictly against the taxing authority and in favor of the taxpayer." *City & County of Denver v. Sweet,* 138 Colo. 41, 52, 329 P.2d 441, 447 (1958).

In our view, the BOCC's interpretation of the statutes governing abatement would lead to an unjust and absurd result because it would preclude any purchaser of property after the assessment date from filing for an abatement or refund even though that purchaser ultimately bears the economic burden of the overvalued taxes and even if, as here, the former owner no longer has any economic interest in the property. We do not believe that the General Assembly intended such a result.

Our conclusion is buttressed by the fact that two other jurisdictions facing the identical issue have similarly held that a mid-year purchaser of property has standing to seek an abatement of property taxes based upon overvaluation, because overvaluation of the property injures the purchaser's legally protected interest in the property. *See deZahara v. Weiss,* 516 A.2d 879 (R.I. 1986); *Langford v. Town of Newton,* 119 N.H. 470, 403 A.2d 414 (1979). *Cf. Telluride Regional Airport Authority v. Board of Equalization,* 789 P.2d 201 (Colo.App. 1989) (lessee of property had standing to seek abatement because lessee "bore the financial burden of the tax...." 789 P.2d at 203). We are unaware of any of any contrary authority on this precise issue.

Finally, we note that the property tax administrator recently sent a memorandum to all county assessors consistent with this holding. The tax administrator's memo provides:

> [A]batement petitions can be filed for any year in which the taxpayer held title.... If the petition concerns overvaluation, the assessor must check to see if a protest was filed by the prior owner. If *a protest was not filed, then the new owner may challenge the value; even*

*though the new owner may have held title for only part of the assessment year.* (emphasis added)

*See Board of Assessment Appeals v. Country Club,* 792 P.2d 299 (Colo.1990) (it is appropriate for court to give deference to the contemporaneous construction of a statute by the agency charged with its administration).

In sum, we conclude that taxpayer here has met its burden of demonstrating that the injury alleged was to a legally protected right and that it, therefore, has standing to seek an abatement. *See Maurer v. Young Life, supra.*

The Board of Assessment Appeals' order dismissing Utah Motel's petitions for abatement is reversed, and the cause is remanded to the Board of Assessment Appeals to determine whether taxpayer's petitions were timely and for further proceedings contingent on disposition of the timeliness issue.

SMITH and CRISWELL, JJ., concur.