**PADRE RESORT, INC., Petitioner–Appellant,**

v.

**JEFFERSON COUNTY BOARD OF EQUALIZATION, Respondent–Appellee,**

and

**Colorado State Board of Assessment Appeals, Appellee.**

No. 00CA0755.

Colorado Court of Appeals, Div. IV.

March 1, 2001.

Certiorari Denied Sept. 4, 2001.

Harlan L. Ray, Denver, CO, for Petitioner–Appellant.

Frank J. Hutfless, Jefferson County Attorney, Timothy P. Cox, Assistant County Attorney, Golden, CO, for Respondent–Appellee.

No Appearance for Appellee.

Opinion by Judge DAVIDSON.

In this property tax review, the Jefferson County Assessor's 1999 valuation of hotel property of petitioner, Padre Resort, Inc., was based primarily on the income approach and an occupancy rate of 75% to arrive at a property value of $6,010,800. Petitioner challenged the assessor's valuation before respondent, Jefferson County Board of Equalization (BOE), which affirmed the assessor's determination.

Petitioner then appealed to the Board of Assessment Appeals (BAA), which conducted a *de novo* hearing and, basing its calculation on an occupancy rate of 70%, reduced the property's valuation to $5,722,297. Petitioner now seeks judicial review of the BAA's decision. We affirm.

■ This court may set aside the BAA's decision only if it was an abuse of discretion, arbitrary or capricious, based upon findings of fact that were clearly erroneous, unsupported by substantial evidence, or otherwise contrary to law. *See* § 24–4–106(7), C.R.S. 2000; *City & County of Denver v. Board of*

*Assessment Appeals,* 802 P.2d 1109 (Colo. App.1990).

## I.

Petitioner contends that, by failing to consider economic conditions as of June 30, 1998, the BAA assigned an excessive value to the hotel property. We disagree.

Valuation of property is determined by the actual value of the taxable real property as ascertained by applying the factors set forth in § 39–1–103(5), C.R.S.2000, "for the one-and-one-half-year period immediately prior to July 1 immediately preceding the assessment date" (the "base period"). Section 39–1–104(10.2)(d), C.R.S.2000. "Actual value" and "market value" are essentially the same: "the most probable price ... for which the appraised property will sell in a competitive market under all conditions requisite to fair sale...." *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 151 (Colo.1988).

■ In determining the value of a property, the assessor may adopt any of three methods: the cost approach, the market approach, and the income approach. *See* § 39–1–103(5)(a), C.R.S.2000. Use of the base period is mandatory under § 39–1–104(10.2)(d), and information on conditions existing outside the base period may not be considered. *See Carrara Place, Ltd. v. Arapahoe County Board of Equalization,* 761 P.2d 197 (Colo. 1988).

■ The goal of the base period method is not to "match appraised values with real economic values as closely as possible," but to secure "just and equalized valuations." *Carrara Place, Ltd. v. Arapahoe County Board of Equalization, supra,* 761 P.2d at 203–204. Thus, although petitioner asserts otherwise, the fact that evaluations for other purposes, such as calculation of eminent domain damages, take projected conditions into consideration is immaterial here.

Both parties' experts testified before the BAA that the income approach is the most widely used in the hotel industry. Application of the income approach entails estimating income, subtracting expenses from the income, and applying a capitalization rate to the result to achieve the taxable value.

■ Both experts used essentially the same figures in arriving at their respective valuations, with one exception. In arriving at the income portion of the calculation, each expert used a different base period occupancy rate: the BOE used a 75% occupancy rate, whereas petitioner used a 52.5% occupancy rate.

Petitioner argued that its 52.5% occupancy rate figure was proper because it took into account present conditions such as hotel rooms under construction, building permits issued, and plans presented to the county planning department as of June 30, 1998. Petitioner's calculation was based on a projected 2456 rooms in the surrounding area, rather than the 1421 rooms existing during the base period.

On the other hand, the BOE asserted that the inclusion of prospective rooms is contrary to statute because it takes into consideration conditions existing outside the mandated base period. The BOE arrived at the 75% figure by considering industry standards, using calculations based solely on information from the base period.

Although it determined that an occupancy rate of 70% was more accurate, and adjusted the value of the property accordingly, the BAA essentially agreed with the BOE. Petitioner contends that this was error. Specifically, petitioner argues that information known during the base period concerning hotel rooms that were projected to be constructed sometime in the future constituted an economic condition that should have been taken into account. We disagree.

■ Because *actual* economic conditions existing outside the base period may not be considered in arriving at the taxable value of property, *see Carrara Place, Ltd. v. Arapahoe County Board of Equalization, supra,* it follows *a fortiori* that *projected and estimated* economic conditions that may exist beyond that period may not be considered, even if data underlying those projections are known during the base period. As such, proposed hotel rooms are not an economic condition to

be considered until they are constructed and generate income.

Here, petitioner used an estimated number of occupants and, rather than dividing by the base period number of rooms—1421—to arrive at the occupancy rate, divided by a larger, prospective number of rooms—2456—to arrive at a lower occupancy figure, which in turn led to a lower income and a lower valuation for the hotel property. However, because hotel rooms under construction, not yet built, or not yet approved during the base period would become a relevant economic condition, if ever, only outside the base period, the BAA correctly determined that they could not be factored into the 1999 valuation of petitioner's hotel property.

## II.

Petitioner also contends that, by adopting the appraiser's income approach, the BAA failed to follow the manuals and procedures of the Colorado Property Tax Administrator. We disagree.

The Property Tax Administrator is required and authorized to prepare and publish materials concerning methods of appraisal, and to require their utilization by assessors in valuing and assessing taxable property. See § 39–2–109(1)(e), C.R.S.2000. These manuals are binding upon the County Assessors. See Huddleston v. Grand County Board of Equalization, 913 P.2d 15 (Colo. 1996).

Petitioner cites to the section of the manual that requires that an estimate of the "potential annual stabilized income" include the "income generated from rental of rooms." See Colorado Division of Property Taxation, Appraisal 215: Hotel Motel Workshop Section 2—Valuation 26 (1999).

However, although assessors must engage in some speculation in forecasting the "potential annual stabilized income" of the properties they assess, in doing so, they are statutorily bound to rely only on conditions existing in the base period. See § 39–1–104(10.2)(d); Carrara Place, Ltd. v. Arapahoe County Board of Equalization, supra (all

data must be collected during the specific period prescribed by statute); State of Colorado, Department of Local Affairs, Division of Property Taxation, 2 Assessor's Reference Library § 3.1 (2000).

As discussed, the projected hotel rooms were not a condition existing in the base period. Therefore, the BAA properly adhered to the provisions of the Property Tax Administrator's Manuals.

The order is affirmed.

RULAND and KAPELKE, JJ., concur.