BOULDER COUNTY BOARD OF COM-
MISSIONERS; and Joann Groff, Colo-
rado Property Tax Administrator, and
Board of Assessment Appeals, Petition-
ers

v.

HEALTHSOUTH CORPORATION,
Respondent.

No. 09SC380.

Supreme Court of Colorado,
En Banc.

Jan. 31, 2011.

John W. Suthers, Attorney General, Robert H. Dodd, Senior Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner Joann Groff, Colorado Property Tax Administrator.

John W. Suthers, Attorney General, Lisa Brenner Freimann, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner Board of Assessment Appeals.

H. Lawrence Hoyt, Boulder County Attorney, Michael A. Koertje, Assistant County Attorney, Boulder, Colorado, Attorneys for Petitioner Boulder County Board of Commissioners.

N.H. Wright & Associates, LLC, Norman H. Wright, Greenwood Village, Colorado, Attorneys for Respondent.

Kathryn Schroeder, Arapahoe County Attorney, George Rosenberg, Breena N. Meng, Littleton, Colorado, Attorneys for Amicus Curiae Arapahoe County Board of Commissioners.

Justice HOBBS delivered the Opinion of the Court.

In this action for a tax refund, we must determine whether a taxpayer that intentionally listed and paid taxes on non-existent personal property has a right to a refund. The court of appeals concluded that the taxpayer, HealthSouth Corporation ("HealthSouth"), did have statutory grounds for a refund claim. *See HealthSouth v. Boulder County*, 220 P.3d 966 (Colo.App.2009). We disagree.[1]

In the case before us, the taxpayer admitted that it sought the imposition of taxes based on assets it knew to be non-existent. The General Assembly developed a tax system for personal property that allows for abatement and refund due to taxpayer errors, factual errors, and legal errors on the part of the assessor. We hold that section 39–10–114, C.R.S. (2010) does not contain a provision for abatement or refund of property taxes paid by a taxpayer through self-reporting of personal property it knows does not exist.

## I.

In December 2004, HealthSouth filed two petitions with Boulder County for refund of personal property taxes it paid for the 2002 tax year. HealthSouth sought a reduction in the valuation of its Longmont facilities from $654,642 to $125,517 and its Boulder facilities from $471,060 to $60,312. In a letter accompanying its petitions, HealthSouth asserted that it made "clerical errors" that necessitated a change in the assessment. In the same letter, HealthSouth admitted that "as part of a fraudulent scheme, HealthSouth Corpora-

---

1. We granted certiorari on the following issues:
   (1) Whether a taxpayer has a statutory right to a tax abatement and refund when the taxpayer overstated assets by including false entries on tax schedules used for property valuation.
   (2) Whether the equitable doctrine of unclean hands prevents a taxpayer from receiving a tax

abatement and refund when the taxpayer overstated assets by including false entries on tax schedules used for property valuation.
Because we determine that HealthSouth has no statutory right to a refund, we do not reach the issue of whether unclean hands would also apply to deny a refund.

tion inflated income with matching entries to property, plant and equipment accounts." HealthSouth attached to its letter the 2003 Securities and Exchange Commission complaint against HealthSouth, detailing the scheme.

Beginning in the late 1990s, at the direction of its founder/CEO and other executives, HealthSouth began overstating its earnings in order to meet expectations set by Wall Street analysts. To account for false increases in earnings, HealthSouth added non-existent assets to its ledgers to balance its books. By 2003, HealthSouth had overstated its earnings by at least $1.4 billion. In Colorado, as it did across the nation, HealthSouth filed misleading personal property declarations with the Boulder County Assessor's Office to match its internal, fraudulent accounting and avoid raising the suspicion of federal authorities.[2] The false entries appeared on HealthSouth's personal property declarations as "AP summary." These "AP summary" line items were valued in the hundreds of thousands of dollars. KPMG was retained to handle HealthSouth's personal property tax returns. A KPMG employee stated that the head of HealthSouth's tax department informed her that "AP Summary" items were miscellaneous business equipment. In fact, "AP Summary" items were wholly fictitious assets which never represented any asset, tangible or intangible, acquired by HealthSouth. The entries only served the purposes of HealthSouth's fraudulent scheme.

After the Boulder County Board of Commissioners ("Boulder County") denied both of its petitions for refund, HealthSouth appealed to the Colorado Board of Assessment Appeals ("BAA"). Boulder County moved to dismiss the appeal. Following briefing and oral arguments, the BAA dismissed the petitions, concluding that HealthSouth did not have a viable claim for a refund under section 39–10–114. The BAA determined that HealthSouth's petition could not be based on clerical error, overvaluation, or erroneous valuation—the grounds for refund under the statute.

The court of appeals reversed the order of the BAA in a split decision. The court of appeals determined that HealthSouth had a viable claim for abatement on the grounds of overvaluation. In its opinion, the court of appeals gave the term "overvaluation" a broad definition, concluding that overvaluation was a factual determination available to provide relief to HealthSouth. The court also relied upon the statute's legislative declaration, which states the General Assembly's "intent of extending to any taxpayer the right to petition for an abatement or refund of property taxes levied erroneously or illegally due to an overvaluation of such taxpayer's property." Ch. 309, sec. 1, 1991 Colo. Sess. Laws 1962.

The dissent to the court of appeals' majority opinion reasoned that HealthSouth is not entitled to pursue a refund because it based "its claim for relief on its own misconduct." *HealthSouth*, 220 P.3d at 972. The dissent says that the language of section 39–5–116(2)(c), C.R.S. (2010) is significant: this legislative language states that taxpayers giving false, erroneous, or misleading information have the right to pursue a refund "dependent upon the basis of the claim." The dissent would have concluded that this term qualifies the right, allowing the decision maker—here, Boulder County and the BAA—to deny the refund on equitable principles.

## II.

In the case before us, the taxpayer admitted that it sought the imposition of taxes based on assets it knew to be non-existent. The General Assembly developed a tax system for personal property that allows for abatement and refund due to taxpayer errors, factual errors, and legal errors on the part of the assessor. We hold that section 39–10–114 does not contain a provision for abatement or refund of property taxes paid by a taxpayer through self-reporting of personal property it knows does not exist.

---

2. HealthSouth also filed petitions for abatement and refund in Arapahoe, El Paso, Weld, and Larimer Counties. These petitions have been held in abeyance pending our decision.

## A.

### Statutory Right to Tax Refund

#### 1. Standard of Review and Applicable Law

■ An appellate court may set aside an order of the BAA only if it finds an abuse of discretion, or that the order was arbitrary and capricious, based upon findings of fact that were clearly erroneous, unsupported by substantial evidence, or otherwise contrary to law. § 24–4–106(7), C.R.S. (2010); *Padre Resort, Inc. v. Jefferson Cnty. Bd. of Equalization*, 30 P.3d 813, 814 (Colo.App.2001). We consult and defer to the implementing agency's determinations, including those of the Property Tax Administrator and the BAA, if they accord with statutory provisions. *Washington Cnty. Bd. of Equalization v. Petron Development Co.*, 109 P.3d 146, 150 (Colo.2005); *Bd. of Assessment Appeals v. Valley Country Club*, 792 P.2d 299, 301 (Colo.1990).

■ Although we take into account the agency's determination, interpretation of statutes is a question of law that we review de novo. *Robles v. People*, 811 P.2d 804, 806 (Colo.1991). When we interpret a statute, our duty is to effectuate the intent of the General Assembly in enacting the law. *Boatright v. Derr*, 919 P.2d 221, 224 (Colo.1996). The first step of our inquiry is an examination of the plain language of the statute. *Id.* We also consider the context of the term at issue and construe it consistently with other terms in the statutory framework in order to effectuate the intent of the General Assembly. *Fogg v. Macaluso*, 892 P.2d 271, 274 (Colo.1995). We do not add words to a statute. *Holcomb v. Jan–Pro Cleaning Sys.*, 172 P.3d 888, 894 (Colo.2007). Ascertaining legislative intent is our goal. If the meaning of the statute is ambiguous, we may utilize other statutory construction aids. *Williams v. Kunau*, 147 P.3d 33, 36 (Colo.2006).

Section 39–10–114(1)(a)(I)(A) provides for the abatement or cancellation of taxes in certain circumstances:

> [I]f taxes have been levied erroneously or illegally, *whether due to erroneous valuation for assessment, irregularity in levying, clerical error or overvaluation*, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes in the manner provided by law. The assessor shall make such report if the assessor discovers that taxes have been levied erroneously or illegally. If such taxes have been collected by the treasurer, the board of county commissioners shall authorize refund of the same in the manner provided by law.

(Emphasis added). The statute thus lays out four grounds for refund or abatement: (1) erroneous valuation for assessment, (2) irregularity in levying, (3) clerical error, and (4) overvaluation.

#### 2. Erroneous Valuation for Assessment

■ The statute itself does not define each term, but contains guidance. First, under the terms of the statute, "erroneous valuation" includes the reclassification of property from agricultural land to any other classification of property. The legislature added these provisions in 1997 to expand the definition of agricultural property. One aspect of the legislature's intent is apparent from the text of the statute: to retroactively remedy the taxation of agricultural property assessed as other property. § 39–10–114(1)(a)(I)(A). From the inclusion of this provision, we may infer that the legislature understood the "erroneous valuation" basis for refund to primarily consist of matters concerning the classification or technical aspects of valuing property. An assessor reviewing real property or personal property for valuation is the most likely source of such an error, where assessors rely on previous years' data and complicated classification systems. § 39–1–103, C.R.S. (2010) (real and personal property values determined by assessor on basis of cost approach, market approach, and income approach); *see Cherry Hills Country Club v. Bd. of Cnty. Comm'rs*, 832 P.2d 1105, 1109 (Colo.App.1992) (assessor's valuation of real property in consecutive tax years was incorrect where both should have been analyzed from the same base period).

■ In *Boulder Country Club v. Boulder County*, the court of appeals analyzed the phrase "erroneous valuation" and concluded

that the term necessarily involves a legal issue. 97 P.3d 119, 122 (Colo.App.2004). In that case, the taxpayer was assessed two different values in two consecutive years by the Boulder County Assessor. The court of appeals' conclusion is reasonable, given that an erroneous valuation would usually involve—as it did in *Boulder Country Club*—a challenge to the value determination or classification of real property by an assessor. Erroneous valuation by an assessor is not defined by the terms of the statute or in our case law to include circumstances involving the valuation of fictitious assets.

### 3. Clerical Error

■ The second basis, "an irregularity in levying" is rarely claimed and was not raised by HealthSouth; therefore, we do not address its definition. The third basis, "clerical error," is defined in the statute to include "any clerical error made by a taxpayer in completing personal property schedules pursuant to the provisions of article 5 of this title." § 39–10–114(1)(a)(I)(A).[3] The clerical error basis for abatement and refund has a clear meaning from the plain language of the statute: it is applicable to taxpayer errors and has been interpreted by the courts to include errors made by third parties. *Landmark Petroleum, Inc. v. Bd. of Cnty. Comm'rs*, 870 P.2d 610, 614 (Colo.App.1993).

The term clerical error denotes errors resulting from simple, minor mistakes, for example, typing an incorrect number, or mistranscribing a word. *Black's Law Dictionary* 622 (9th ed. 2009). The court of appeals gave the term similar meaning in *5050 S. Broadway Corp. v. Arapahoe County Board of Commissioners,* holding that the term included transcription mistakes, errors of law, mistakes appearing on the face of a record, and other defects or omissions in the record. 815 P.2d 966, 971 (Colo.App.1991) (superseded in other respects by statute). The court also determined that the term clerical error did not include "mistakes of assessors who make factual errors in valuating property." *Id.*

In *Landmark Petroleum,* the court of appeals held that an arbitrator's error in writing "assessed value" instead of "actual value" was a clerical error and therefore the taxpayer had a valid basis for abatement and refund. 870 P.2d at 614.

### 4. Overvaluation

The statute does not define the term "overvaluation" upon which HealthSouth relies heavily. Overvaluation was added as a basis for abatement and refund under section 39–10–114 by the legislature in 1991 in response to the court of appeals' decision in *5050 S. Broadway Corp.* rejecting a taxpayer's attempt to contest overvaluation under the statute. 815 P.2d at 970. The legislative declaration accompanying the statute explained its "intent of extending to any taxpayer the right to petition for an abatement or refund of property taxes *levied erroneously or illegally* due to an overvaluation of such taxpayer's property." Ch. 309, sec. 1, 1991 Colo. Sess. Laws 1962 (emphasis added).

The overvaluation at issue in *5050 S. Broadway Corp.* was the assessor's valuation of a taxpayer's real property. 815 P.2d at 971. Because the legislature responded directly to the court of appeals' decision in *5050 S. Broadway Corp.,* we may infer that the legislature intended to address similar situations: an overvaluation of personal or real property due to an overvaluation made by the most likely source of such an error—the assessor, not the taxpayer.

We analyzed the amendment to section 39–10–114 in *Property Tax Administrator v. Production Geophysical Services, Inc.,* 860 P.2d 514 (Colo.1993). In *Production Geophysical,* taxpayers sought a refund arguing that the assessor had overvalued their personal property. *Id.* at 515. The overvaluation at issue stemmed from the taxpayers' failure to complete and return the personal property schedules sent out by the assessor. *Id.* Due to the taxpayers' inaction, the assessor had to rely upon "best available informa-

---

**3.** Article 5 personal property schedules are the basis upon which business personal property is assessed. § 39–5–107, C.R.S. (2010). County assessors mail these schedules to known taxpayers, and rely upon taxpayers' self-reporting to value the property and levy taxes accordingly. § 39–5–108, C.R.S. (2010).

tion" to determine the value of the property. *Id.* Under section 39–5–118, C.R.S. (2010), an assessor's best available information valuation becomes the final valuation if the taxpayer fails to protest under the procedures outlined in section 39–5–122(2), C.R.S. (2010).

The taxpayers in *Production Geophysical* failed to protest the valuations under section 39–5–122(2). We determined that the taxpayers' claims did not fall within the scope of section 39–10–114. There, we specifically concluded that while the taxes assessed may have been too high "in the vernacular sense, it is not an overvaluation as that term is used in the statute because, due to the taxpayers' wrongful inaction, the assessor's BIA valuations are presumed to be valid." *Id.* at 519; § 39–5–118 (assessor's determination of actual value of taxable personal property not rendered invalid by failure to secure or receive personal property schedule). Our holding in *Production Geophysical* highlighted the legislative treatment of personal property, a taxation scheme differing from real property, since the taxpayer must provide information to the assessor. *Id.* We concluded that the legislature could not have intended an interpretation of the term "overvaluation" to result in "no incentive to comply—or rather, no deterrence from refusing to comply with the statutory mandate to file a personal property schedule." *Id.*

In *Wyler/Pebble Creek Ranch v. Colorado Board of Assessment Appeals,* the court of appeals determined that overvaluation is a factual issue. 883 P.2d 597, 600 (Colo.App. 1994). In that case, the taxpayer argued that taxes imposed were "erroneous" or "illegal" because, despite the reclassification of its property from agricultural to residential, the property continued to be used for agricultural purposes. *Id.* The court disagreed, concluding "if, as here, the reclassification issue is totally dependent upon a factual determination, i.e., the actual use of the property at the time the taxes are levied, we view that as an issue of overvaluation." *Id.*

## B.

### Application to this Case

HealthSouth argues that its basis for a refund under section 39–10–114 stems from Boulder County's taxation of non-existent property. HealthSouth thus claims relief under both erroneous valuation and overvaluation based on the actions the Boulder Assessor took in 2002 and its subsequent refusal to refund taxes based on HealthSouth's petitions. HealthSouth further asserts that it complied with the law when it filed its personal property schedules; hence it is entitled to a refund.

■ The undisputed facts contradict HealthSouth's argument. HealthSouth admits that on behalf of the corporation, its corporate officers reported personal property they knew did not exist and intentionally paid taxes thereon.

HealthSouth is correct that an assessor's erroneous valuation or overvaluation both provide grounds for taxpayer relief under section 39–10–114. Here, however, the taxpayer invited imposition of the taxes by affirmatively reporting personal property it knew did not exist. We find no basis in the statute for relief in such a situation.

The "erroneous valuation" basis is not available to HealthSouth because the Boulder Assessor made no mistake in valuation. Instead, the assessor relied upon information provided by HealthSouth, as required by the statute. § 39–5–107. The facts of HealthSouth's claims do not raise any legal issue, nor does HealthSouth contend that the assessor departed from the statutory framework as was the case in both *Boulder Country Club,* 97 P.3d at 122, and *Cherry Hills Country Club,* 832 P.2d at 1109. Likewise, HealthSouth does not claim an erroneous change in the classification of real property by the assessor leading to an erroneous valuation.

ᵛ HealthSouth cannot claim that there was any legal error by the assessor to support its claim. Thus, while the statutory framework accounts for and allows refunds for taxpayer errors and omissions, the erroneous valuation basis does not provide relief for taxpayers who intentionally mislead the assessor. *See Pediatric Neurosurgery, P.C. v. Russell,* 44 P.3d 1063, 1068 (Colo.2002) (we read a stat-

ute as a whole and give each part consistent and harmonious effect).

In its 2004 letter to the Boulder Treasurer, HealthSouth requested a "change in assessment for the account(s) listed above for clerical errors that were made" and also pursued a clerical error claim before the BAA. HealthSouth's intentional over-reporting on its personal property schedules does not fall within the plain language of section 39–10–114(1)(a)(I)(A)'s use of the term "clerical error." *See 5050 S. Broadway Corp.*, 815 P.2d at 971. Clerical error in the statute embraces simple errors and even omissions in the record, but does not include intentional misrepresentation. *Id.*

When it amended section 39–10–114 to include "overvaluation," the General Assembly intended this term to include mistaken as opposed to intentional overvaluation by taxpayers. The General Assembly clearly intended to add overvaluation as a basis for abatement or refund in response to the court of appeals' holding in *5050 S. Broadway Corp.* Ch. 309, sec. 1, 1991 Colo. Sess. Laws 1962. That case involved assessor error. *5050 S. Broadway Corp.*, 815 P.2d at 971.

In *Wyler/Pebble Creek Ranch,* the court of appeals found that, if a refund issue is dependent upon a factual determination, it must be an issue of overvaluation rather than one involving "erroneous" or "illegal" assessments. 883 P.2d at 600. This interpretation accords with the court of appeals' conclusion in *Boulder Country Club* that "erroneous valuation" is necessarily a legal issue. 97 P.3d at 122. Both of these types of errors— legal and factual—would typically be on the part of an assessor, since it is the assessor's duty to value and classify property.

On the other hand, taxpayers are most often responsible for clerical errors or omissions. The General Assembly has accounted for these circumstances, providing for penalties and the loss of any accrued interest on

overpayments for taxpayers who fail to report or under-report. § 39–5–116, § 39–10–114(1)(b). Significantly, the General Assembly did not change the sections regarding penalties and withholding of interest when it added overvaluation as a basis for refund and abatement in 1991. If we were to interpret the "overvaluation" basis to include intentional over-reporting, the result would be that a taxpayer such as HealthSouth who intentionally misleads the assessor would be entitled to interest, while a taxpayer committing an unintentional clerical error could not recover interest.[4] Likewise, HealthSouth would not be subject to penalties under section 39–5–116 for failure to report or omission of personal property.

While HealthSouth's intentional over-reporting as part of its fraudulent scheme may have resulted in an overvaluation in the vernacular sense, it may not claim a refund based on "overvaluation" as that term is used in the current statutory framework. *See Production Geophysical,* 860 P.2d at 519 (taxpayers could not claim a refund on the "overvaluation" basis because of their wrongful inaction). Such an interpretation would run contrary both to the statutory framework established by the General Assembly as well as the public policy goals of Colorado's tax system. We will not read into a statute language that does not exist. HealthSouth would have us read into the statute a provision allowing a refund based on intentional representation of non-existent assets. *See HealthSouth v. Jefferson Cnty. Tax Assessor,* 978 So.2d 745, 750 (Ala.2007) (finding for HealthSouth's refund claims would require that the court "expand the commonly understood and long-settled scope of the terms 'error' or 'mistake' ").

The personal property tax framework established by the General Assembly relies upon truthful reporting by taxpayers. In *Production Geophysical,* we noted that if

4. The language of section 39–10–114(1)(b) forecloses HealthSouth's claim for a refund in this case for another reason. Section 39–10–114(1)(b) permits a taxpayer to recover a refund and refund interest under certain circumstances, except "refund interest shall not be paid if the taxes were erroneously levied and collected as a result of *an error made by the taxpayer in complet-*

*ing personal property schedules....*" (emphasis added). This language suggests that a refund may only be obtained by the taxpayer for misreporting property on personal property schedules when that misreporting is due to an "error" by the taxpayer, not due to intentional misreporting, as occurred here.

there are no adverse consequences for failing to report, taxpayers might be less inclined to fulfill their statutory duty. 860 P.2d at 519–20. Such a result is repugnant to the General Assembly's intent, particularly in situations where the state's assessors do not have the resources to audit every personal property schedule, as HealthSouth suggests. *Id.; See* Craig M. Boise, *Playing with 'Monopoly Money': Phony Profits, Fraud Penalties and Equity,* 90 Minn. L.Rev. 144, 195 (2005). In *Production Geophysical,* we denied relief to taxpayers based on their wrongful inaction in failing to file personal property schedules. *Id.* at 519. HealthSouth's intentionally misleading over-reporting implicates the same consequences to the tax system—uncertainty in county revenue, taxpayer disincentive to comply with statutory mandates, and an untenable administrative burden on assessors and county government.[5]

### III.

Accordingly, we reverse the court of appeals' decision and reinstate the Order of the Board of Assessment Appeals.

Justice COATS dissents.

Justice MÁRQUEZ does not participate.

Justice COATS, dissenting.

I disagree not only with the majority's statutory construction but also with its assumption of essential facts I consider to be hotly contested. Because I believe the court of appeals correctly interpreted the statutory scheme to provide for a refund of erroneously levied taxes, irrespective of responsibility for overvaluation of the property in question, and because I believe that, in any event, HealthSouth has neither conceded nor been given an opportunity to dispute the authority,

or even apparent authority, of any officers fraudulently overvaluing its assets, I respectfully dissent.

With regard to the question of interpretation, I believe the majority reads more into the statutory language than accepted rules of construction permit. The county clearly has legal authority to value and tax *only* property actually located within the county. §§ 39–1–103(5)(a), –105, C.R.S. (2010). The statute provides for the abatement of taxes levied erroneously or illegally, whether the error is in the nature of "erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation." § 39–10–114(1)(a)(I)(A), C.R.S. (2010). The statute also indisputably provides for the refund of erroneously or illegally levied taxes (albeit without interest), even if that erroneous or illegal levy results from errors or omissions on the part of the taxpayer itself, specifically including "error made by the taxpayer in completing personal property schedules." § 39–10–114(1)(b). Based on little more than its intuition about the kinds of errors more likely to be attributable to the county and those more likely to be attributable to the taxpayer, the majority declares a legislative intent to permit recovery for taxpayer error *only* if that error or omission can be classified as "clerical."[1]

By contrast, I believe the statute should be applied as written, to permit a refund of taxes erroneously levied on any property not actually located in the county, regardless of the nature of the error resulting in overvaluation, as long as the statutory abatement process is complied with. Unlike the majority, I believe (as did the court of appeals) that the legislature made abundantly clear in its 1991 declaration that adding the word "overvaluation" to its litany of justifications for abatement was intended as a direct response

---

5. Because we construe a statute that contains the basis for claiming and obtaining a tax refund, we do not address the grounds for the second certiorari issue.

1. As an afterthought, the majority suggests that use of the word "error" in subsection 114(1)(b), in and of itself, necessarily implies a mistake by the taxpayer as distinguished from intentional over-reporting. Maj. op. at 954 n. 4. It is diffi-

cult to see how this conclusory assertion adds weight to the majority's argument. Standing alone, the term "error" is used just as naturally to refer to any inaccuracy or departure from the truth, without regard for the actor's awareness of or reason for making the error. In this context, the term is expressly used with regard to taxes levied "erroneously," to include any "erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation." § 39–10–114(1)(a)(I)(A).

to the demand of the court of appeals, *see 5050 S. Broadway Corp. v. Arapahoe County Bd. of Comm'rs,* 815 P.2d 966, 969 (Colo.App. 1991), for "a more definitive statutory clarification" of a legislative desire to "allow a taxpayer to petition for an abatement or refund for essentially all errors in valuation." Ch. 309, sec. 1, 1991 Colo. Sess. Laws 1962. Similarly, our own denial of refund in *Property Tax Administrator v. Production Geophysical Services, Inc.,* 860 P.2d 514 (Colo. 1993), was clearly dictated by the procedural default of the taxpayer in that case and implied absolutely nothing about the availability of recovery (or lack thereof) following a taxpayer's overvaluation of its own property. Even the dissenting voice on the court of appeals felt constrained to seek support from outside sources and general principles of equity, rather than imputing a limitation on abatement that simply cannot be found in the statute itself. *See HealthSouth Corp. v. Boulder County Bd. of Comm'rs,* 220 P.3d 966, 975–77 (Colo.App.2009) (Bernard, J., dissenting).

Although it is not entirely clear to me precisely what the majority intends by "clerical," I believe it *is* clear from the scant record in this case that HealthSouth has never admitted, nor has it been proven, that it intentionally over-reported the value of, or sought the imposition of taxes on, personal property it knew did not exist. Therefore, even if the statute *could* fairly be construed to withhold from taxpayers the refund of taxes levied erroneously only because of their own intentional overvaluation, I could not concur in the court's judgment in this case.

Because HealthSouth is a corporate person, by describing its acts as intentional, the majority presumably intends that the acts in question were authorized or intentionally committed by its authorized agents. *Cf. Grease Monkey Int'l, Inc. v. Montoya,* 904 P.2d 468, 475–76 (Colo.1995) (extending tort liability to corporation for chief executive's fraud where he was authorized to act without board approval, he acted within his apparent authority, and he made material misrepresentations to defraud investors). Although it was denied an evidentiary hearing to prove its contentions, HealthSouth has argued throughout that the fraudulent overstatement of its assets was perpetrated by various of its officers, without authorization. The "admission" relied on by the majority consists of nothing more than a cover letter from the corporation's tax-preparer accompanying its petition for abatement, describing an attached complaint from a federal lawsuit, which was ultimately settled without admission of wrongdoing by the corporation. *See S.E.C. v. HealthSouth Corp.,* CV–03–J–0615–S (N.D. Ala. June 22, 2005) (final judgment as to defendant HealthSouth Corporation).

Perhaps even more importantly, however, the record contains no suggestion whatsoever that HealthSouth (or any of its officers or agents) intentionally sought the imposition of taxes on personal property it knew did not exist. To the contrary, in an undisputed affidavit attached to HealthSouth's objection to dismissal, the tax-preparer who originally submitted the property schedules in question swore that she had no knowledge, information, or reason to believe that the information provided by her was not accurate, true, and correct. The majority's characterization notwithstanding, there has been no allegation that the corporation or its officers or agents sought the imposition of taxes on non-existent property in furtherance of a scheme to defraud third parties, much less to defraud Boulder County itself.

The majority clearly finds it offensive (as did the dissenting opinion in the court of appeals) that HealthSouth should be entitled to a refund of overpaid taxes under these circumstances. It is less clear to me that corporate shareholders should be levied a fine by Boulder County for the misconduct of certain corporate officers, directed against third parties altogether. In any event, however, it is for the General Assembly to prescribe the regulatory process for the levy, collection, and abatement of taxes. I would not so lightly convert, by construction, a regulatory scheme designed to correct for overpaid taxes into an authorization for determining culpability and assigning blame.

Both because I do not believe the statutes at issue here are properly construed to limit

taxpayer remedies as the majority has done, and because I do not believe the factual predicate for denying recovery to Health-South, even under the majority's construction, has been established in this case, I respectfully dissent.