The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 14, 2018

## 2018COA86

## No. 17CA0433 Hogan v. Bd. of Cty. Comm'rs — Taxation — Property Tax — Residential Land

In this property tax case, a division of the court of appeals

concludes that the Board of Assessment Appeals misconstrued

section 39-1-102(14.4)(a), C.R.S. 2017. The division analyzes the

statute and concludes that (1) a landowner's potential future sale of

a parcel of land contiguous to a residential parcel is generally not

relevant in determining whether the parcel is residential on the

relevant assessment date; (2) the use of the contiguous parcel need

not be "necessary" or "essential" to be "integral" to the parcel

containing a residence; and (3) the use of the contiguous parcel

need not be "active" as opposed to "passive."

COLORADO COURT OF APPEALS                                    **2018COA86**

Court of Appeals No. 17CA0433
Board of Assessment Appeals Case No. 68822

Marc Hogan and Marilyn Hogan,

Plaintiffs-Appellants,

v.

Board of County Commissioners of Summit County, Colorado; and Board of
Assessment Appeals,

Defendants-Appellees.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE CASEBOLT*
Dunn and Welling, JJ., concur

Announced June 14, 2018

Ryley Carlock & Applewhite, F. Brittin Clayton III, Denver, Colorado, for
Plaintiffs-Appellants

Jeffrey Huntley, County Attorney, Franklin Celico, Assistant County Attorney,
Breckenridge, Colorado, for Respondent-Appellee Board of County
Commissioners

Cynthia H. Coffman, Attorney General, Evan P. Brennan, Assistant Attorney
General, Denver, Colorado, for Respondent-Appellee Board of Assessment
Appeals

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Petitioners, Marc Hogan and Marilyn Hogan (the Hogans), appeal the order of the Board of Assessment Appeals (BAA) denying their request to reclassify a parcel of their land as residential for property tax purposes.  We reverse the BAA's order and remand the case for further proceedings.

## I.    Background

¶ 2    The Hogans own three connected and contiguous parcels of land in Summit County, Colorado.  They purchased the first parcel (Lot 1) in 1983 and built a home on it.  They purchased an adjoining parcel (Lot 2) in 1988 and subsequently built a deck extending from their home across the boundary line onto Lot 2.  In 1995, the Hogans acquired a third adjoining parcel (Lot 3).  Lot 3 is located in a subdivision and has an underground sewer line and an unpaved driveway installed by the original developer of the subdivision, but otherwise remains undeveloped.  The three parcels form an "L" shape, with the Hogans' home on Lot 1 at the top and Lot 3 at the bottom.

¶ 3    The Summit County Assessor classified both Lot 2 and Lot 3 as vacant land.  The Hogans requested the two parcels be reclassified as residential land.  The County Assessor agreed that

Lot 2 qualified as residential land but denied the request to reclassify Lot 3 as residential, determining it to be vacant land for purposes of taxation.

¶ 4    The Hogans appealed the County Assessor's decision to the Board of County Commissioners of Summit County (County), which upheld the County Assessor's classification.  The Hogans appealed that determination to the BAA.  After a de novo hearing, the BAA upheld the County's classification of Lot 3 as vacant land, relying primarily on the testimony of the County Assessor.

¶ 5    This appeal followed.

## II.    Discussion

¶ 6    The Hogans challenge the BAA's order regarding Lot 3.  They contend that all three parcels qualify for residential classification under section 39-1-102(14.4)(a), C.R.S. 2017, which states:

> "Residential land" means a parcel or
> contiguous parcels of land under common
> ownership upon which residential
> improvements are located and that is used as
> a unit in conjunction with the residential
> improvements located thereon.

¶ 7    The Hogans assert that the BAA erred in determining that Lot 3 was not "used as a unit in conjunction with the residential

2

improvements."  We conclude that the BAA based its ruling on an erroneous interpretation of "residential land."  Consequently, we reverse the BAA's order and remand the case for redetermination under the proper interpretation of "residential land."

## A.    Standard of Review

¶ 8      Because the BAA's property classification involves mixed questions of law and fact, we will uphold it on appeal if it (1) has a reasonable basis in law and (2) is supported by substantial evidence in the record.  *O'Neil v. Conejos Cty. Bd. of Comm'rs*, 2017 COA 30, ¶ 11.

¶ 9      We consult and defer to the implementing agency's determinations, including those of the Property Tax Administrator (PTA) and the BAA, if they accord with statutory provisions. *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011).

¶ 10     Although we take into account the agency's determination, interpretation of statutes is a question of law that we review de novo.  *Id.*  Thus, "[w]hile we give deference to an administrative agency's interpretation of a statute, we are not bound by a decision that misapplies or misconstrues the law." *Fifield v. Pitkin Cty. Bd.*

*of Comm'rs*, 2012 COA 197, ¶ 6 (quoting *Jet Black, LLC v. Routt Cty. Bd. of Cty. Comm'rs*, 165 P.3d 744, 748 (Colo. App. 2006)). Moreover, a reviewing court may set aside a BAA decision if it "reflects a failure to abide by the statutory scheme for calculating property tax assessments." *Id.* (quoting *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27, 34 (Colo. 1990)).

¶ 11    When interpreting a statute, "[o]ur primary objective is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole." *Id.* at ¶ 5 (quoting *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010)).

## B.    Other Applicable Law

¶ 12    The PTA is statutorily required to create manuals, appraisal procedures, and instructions concerning methods of appraising and valuing land and improvements. § 39-2-109(1)(e), C.R.S. 2017.  The PTA has created the Assessor's Reference Library (ARL), and county assessors are required to follow it. *Huddleston v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17-18 (Colo. 1996).  The ARL interprets section 39-1-102(14.4) to mean that "[p]arcels of land, under common ownership, that are contiguous and used as an integral

4

part of a residence, are classified as residential property." 2 Div. of Prop. Taxation, Dep't of Local Affairs, *Assessors Reference Library* § 6, at 6.10 (rev. Apr. 2018).

¶ 13    In determining whether a contiguous parcel is used in conjunction with a residential parcel, the ARL dictates that an assessor should consider the following factors:

> Are the contiguous parcels under common ownership?
>
> Are the parcels considered an integral part of the residence and actually used as a common unit with the residence?
>
> Would the parcel(s) in question likely be conveyed with the residence as a unit?
>
> Is the primary purpose of the parcel and associated structures to be for the support, enjoyment, or other non-commercial activity of the occupant of the residence?

*Id.* at 6.11.

## C.    Analysis

¶ 14    It is undisputed that the property at issue is contiguous and under common ownership. The Hogans argue that the BAA misconstrued the "used as a unit in conjunction with the residential improvements" requirement of "residential land" under section 39-1-102(14.4)(a). Specifically, they argue that (1) the

likelihood of the parcel being conveyed separately is irrelevant; (2) the use of the parcel need not be necessary or essential to qualify as integral; and (3) use of the parcel need not be "active" as opposed to merely "passive."  We agree.

### 1.    Conveyed as a Unit

¶ 15    "[T]he primary factor to be considered in determining the proper classification for property tax purposes is the actual use of the property on the relevant assessment date."  *Farny v. Bd. of Equalization*, 985 P.2d 106, 109 (Colo. App. 1999).  In comparable cases regarding agricultural land, the supreme court has held that "[t]he taxpayer's subjective intent to use the land is not relevant for ad valorem tax classification purposes. . . .  Rather, the actual surface use of the land must be the focus of any classification of agricultural land for property tax assessment purposes."  *Douglas Cty. Bd. of Equalization v. Clarke*, 921 P.2d 717, 723 (Colo. 1996); *see Estes v. Colo. State Bd. of Assessment Appeals*, 805 P.2d 1174, 1175 (Colo. App. 1990) (reversing BAA classification of land as nonagricultural because, even though owner's primary purpose was to offer and sell the property for monetary profit, the actual surface use of property is the determining factor for purposes of

classification as "agricultural land," and the owner's intentions for its ultimate disposition are irrelevant).

¶ 16    Hence, if a property owner's use of the parcel on the assessment date satisfies the requirements for residential classification, then it is irrelevant if the owner has future plans to sell the parcel or make nonresidential use of it. If the use changes in the future, the County may reclassify the property at that time. *Mission Viejo Co. v. Douglas Cty. Bd. of Equalization*, 881 P.2d 462, 464 (Colo. App. 1994) ("[R]eclassification can and does occur under certain circumstances[;] the statutory scheme as a whole reflects a legislative intent to allow reclassification upon a change of actual use."); *see* § 39–1–103(5)(c), C.R.S. 2017.

¶ 17    We agree with the Hogans that to the extent the ARL's guidance permits property classification based on the owner's predicted future actions, it is contrary to the law. *See Clarke*, 921 P.2d at 723 ("The taxpayer's subjective intent to use the land is not relevant for ad valorem tax classification purposes."). We acknowledge that, in some circumstances, consideration of a future conveyance may be permissible as circumstantial evidence that helps illuminate a property owner's actual use of the property on

the assessment date. Here, however, the County Assessor testified that, in her opinion, the Hogans would be likely to sell Lot 3 separately in the future. The BAA found the testimony of the County Assessor "to be compelling with regard to the factors referenced by the ARL, in particular" the factor concerning the likelihood of conveyance as a unit. The BAA discussed this issue in depth, giving it significant weight. Importantly, this discussion focused solely on the Hogans' potential future action of selling Lot 3 without reference to how this related to the current use of the property.

¶ 18    Accordingly, we conclude the BAA misapplied the law in its order by relying on the possible future conveyance as a separate unit without reference to how that possibility related to the Hogans' current use of the parcel.

## 2.    Integral

¶ 19    At the BAA hearing, the County Assessor testified that she interpreted the word "integral" on page 6.11 of the ARL to mean "necessary" or "essential." The BAA ultimately concluded that Lot 3 "is not used as an *integral* part of the residence." (Emphasis

8

added.)  The BAA further found that the County Assessor "had correctly applied" the statute and the procedures in the ARL.

¶ 20    In part, the BAA based its conclusions on the fact that it was "not convinced that [the Hogans'] uses, including walking the dog, parking, view protection, and buffer from neighboring properties constitute 'use as a unit in conjunction with the residential improvement' as contemplated by [s]ection 39-1-102(14.4).'"  And the BAA found that Lot 2 "already provides ample buffer for walking the dog and preservation of views."

¶ 21    The definition of residential land in section 39-1-102(14.4)(a) does not use the word "integral" except in one particular way that is not relevant here.  The statute specifies that residential land also includes "two acres or less of land on which a residential improvement is located where the improvement is not *integral* to an agricultural operation conducted on such land."  *Id.* (emphasis added); *see Auman v. People*, 109 P.3d 647, 656-57 (Colo. 2005) ("Just as important as what the statute says is what the statute does not say. . . .  We should not construe these omissions by the General Assembly as unintentional.").

¶ 22    Although the statute does not use the word "integral" in the manner the BAA's order referenced, we nevertheless defer to the ARL in its interpretation if that interpretation accords with statutory provisions. *HealthSouth Corp.*, 246 P.3d at 951. We note that definitions of "integral" include "formed as a unit with another part" and "composed of constituent parts." Merriam Webster Dictionary, https://perma.cc/RJ5M-CNFA. Such definitions are clearly compatible with the statute's language that the parcel be "used as a unit in conjunction with" the residential improvements. § 39-1-102(14.4)(a).

¶ 23    However, the County and BAA argue that, as used in the ARL, "integral" means "necessary" or "essential." Although the definition of integral can include something that is "essential to completeness," Merriam Webster Dictionary, https://perma.cc/RJ5M-CNFA, there is no support in the statute for this interpretation. "We do not add words to a statute." *HealthSouth Corp.*, 246 P.3d at 951. Hence, we "decline to judicially rewrite these statutes by adding this language." *Marsico Capital Mgmt., LLC v. Denver Bd. of Cty. Comm'rs*, 2013 COA 90, ¶ 25. Accordingly, to the extent that the ARL's use of the word "integral"

10

makes the definition of residential land narrower than the statute, it is erroneous.

¶ 24    Here, the BAA expressly adopted the County Assessor's erroneous interpretation of the statute and the ARL requiring that the parcel's use be a necessary or essential part of the residence. The BAA appears to have relied on this interpretation when it found that the Hogans' uses of Lot 3 — walking dogs, parking, protecting views, and buffering from adjacent landowners — were not uses contemplated by section 39-1-102(14.4)(a). To the extent the BAA's decision relied on these uses being not necessary or essential, it was erroneous.

¶ 25    Likewise, it appears the County Assessor's erroneous interpretation underlies the BAA's analysis of whether Lot 2 is sufficient for the Hogans' stated uses. We defer to the BAA's factual finding that Lot 2 provides "ample buffer for walking the dog and preservation of views." But this factual finding has no legal bearing on whether Lot 3 qualifies as residential land. Rather than determining whether Lot 3 was being used as a unit in conjunction with the residential improvements, the BAA determined that the

uses of Lot 3 were unnecessary because those uses could be carried out on Lot 2. This is a misapplication of the law.

¶ 26    Accordingly, we conclude the BAA erred by adopting and applying an interpretation of the statute that requires the parcel to be a "necessary" or "essential" part of the residence.

### 3.    Active versus Passive Use

¶ 27    As an additional factor in her denial of reclassification of Lot 3 as residential, the County Assessor testified that the Hogans did not "use" Lot 3 in conjunction with their residence because all the uses to which the Hogans testified, such as dog walking, parking, and view buffering, were passive, not active uses. She stated that "it is not [the County's] opinion that passive uses qualify [property] for reclassification" as residential. Instead, she testified that she typically looked for such "active" uses as the presence of physical improvements, fire pits, playgrounds, septic systems, garages, or other support structures.

¶ 28    As noted previously, the BAA determined that the assessor had "correctly applied" section 39-1-102(14.4)(a) and also stated in its order that it was not convinced that the Hogans' uses of Lot 3, including walking the dog, parking, and view protection, constituted

12

"use of the property in conjunction with the residential improvements located" on Lots 1 and 2.

¶ 29    We find no statutory support for the County Assessor's restrictive interpretation of "use," or the BAA's implicit adoption of that interpretation as a legal test. We see nothing in section 39-1-102(14.4)(a) that would limit the definition of "used" to "active" uses. The usual meaning of "used" is "employed in accomplishing something." Merriam Webster Dictionary, https://perma.cc/XWB7-7PMD.

¶ 30    Furthermore, existing case law supports a more expansive definition of the term. In *Gyurman v. Weld Cty. Bd. of Equalization*, 851 P.2d 307, 308 (Colo. App. 1993), the taxpayer had a home on a thirty-six-acre parcel of land. The assessor imposed a mixed classification, with approximately two acres being classified as residential land and the remaining acreage being classified as vacant land. *Id.* at 309. The taxpayer appealed to the BAA, which changed the classification to entirely residential land because there was no nonresidential use. *Id.* at 308. The BAA ruled that the subject property should not be classified as mixed use property because it had only one use on the assessment date, that being use

13

for residential purposes. *Id.* at 309. It further stated that neither it nor the assessor nor the Board of Equalization had "the power to dictate to a Colorado taxpayer what size parcel of land he must use for a homesite." *Id.* The Board of Equalization appealed the BAA ruling to this court.

¶ 31 In affirming the BAA's decision, a division of this court noted that the taxpayer had testified that

> the entire tract was being used as residential property on the . . . assessment date and that all of it was part of his residence. Specifically, taxpayer testified that he bought the property because he was looking for at least 40 acres to "get some distance" between himself and other people and that he used it by "looking at the wildlife that was out there and keeping people off of it." Taxpayer further testified that all of the land went with the house because, apart from the agricultural use he was planning, nothing else could be done with the land other than to live on it. In documentary evidence, taxpayer also denied that any of the land was vacant and asserted that it was all being used as a unit with his house.

*Id.* at 308.

¶ 32 Hence, the division found sufficient support in the record for the BAA's determination. It further stated that "there is no prescribed limit on the amount of acreage which may be entitled to

14

residential classification as being a part of a taxpayer's residence." *Id.* at 309. *Gyurman* thus establishes that passive uses, such as those attested to by the Hogans here, are legally sufficient as "uses."

¶ 33 Similarly, in *Farny*, the taxpayers had contended that their entire parcel of 320 acres, which contained a 400-square-foot rustic dwelling, should be classified as residential. 985 P.2d at 107. The BAA agreed, and a division of this court affirmed on appeal. The division noted that, based on the evidence presented, "there is no basis for saying that some part of the land was used for a different purpose." *Id.* at 110. Likewise, here, there is no evidence in the record that Lot 3 was used for a nonresidential purpose.

¶ 34 We recognize, as the County and the BAA argue, that *Gyurman* and *Farny* did not involve multiple parcels. However, by its structure and language, section 39-1-102(14.4) and the standards it enunciates apply to both single and multiple-parcel properties. § 39-1-102(14.4)(a) ("'Residential land' means a parcel *or* contiguous parcels of land[.]") (emphasis added). Accordingly, the construction of "used as a unit" applies equally to both.

15

¶ 35    Therefore, to the extent that the BAA's order holds as a matter of law that only "active" uses can qualify under the phrase "used as a unit in conjunction with the residential improvements," it erred.

¶ 36    However, we cannot discern whether the BAA's statement that it was "not convinced that the Hogans' uses . . . 'constitute use as a unit in conjunction with the residential improvements'" constitutes a legal or factual determination.  That is, we cannot tell whether the BAA held that the Hogans' uses do not qualify as "uses," within the meaning of the statute, or, instead, the BAA made a factual determination that the uses were not "in conjunction with the residential improvements."  Equally opaque is the BAA's statement that it "is persuaded by [the County Assessor's] testimony that there was no significant evidence of use observed on the . . . parcel."  Again, we cannot determine whether the BAA meant the Hogans' uses were legally insufficient because they were passive, or whether the BAA meant that the facts failed to establish that the Hogans used the parcel as they alleged.  Accordingly, it should clarify those matters on remand.

¶ 37    We are aware that another division of this court, in *Rust v. Board of County Commissioners*, 2018 COA 72, held under

somewhat similar circumstances that the BAA did not misconstrue the "used as a unit" element of section 39-1-102(14.4)(a). *Id.* at ¶¶ 4, 7. However, it does not appear from the opinion that the BAA equated "integral" with "necessary" or "essential," or that the "use" of the property had to be "active" as opposed to "passive" for a contiguous parcel to qualify as residential land. So *Rust* is distinguishable from this case. In any event, we are not bound by the decision of another division of this court. *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1195 (Colo. App. 2011).

### 4.    Other Grounds to Affirm

¶ 38    We are not persuaded by the BAA's and County's arguments that we may nevertheless affirm the BAA's order on different grounds.

¶ 39    Both the BAA and the County argue that under *Sullivan v. Board of Equalization*, 971 P.2d 675 (Colo. App. 1998), section 39-1-102(14.4)(a) requires that some residential improvement exist on a vacant parcel if it is to qualify as residential land for tax purposes. Because no such improvements are on Lot 3 in this case, they argue that we can affirm BAA's order solely under the holding in *Sullivan.*

¶ 40  However, in *Sullivan,* the two contiguous parcels at issue did not have common ownership as required by the statute.  *Id.* at 676. Thus, the taxpayer was relegated to arguing that the undeveloped parcel "qualified for residential classification *independently from the adjacent improved parcel.*"  *Id.* (emphasis added).  The division in *Sullivan* rejected the taxpayer's argument because "in order for a parcel of land to qualify for residential classification *independently from other parcels,* there must be a residential dwelling unit on the property."  *Id.* (emphasis added).

¶ 41  Thus, *Sullivan* is distinguishable from this case because here, the multiple parcels are both contiguous and have common ownership.  The issue is only whether Lot 3 met the "used as a unit" requirement.

¶ 42  Further, the division in *Fifield* addressed this very issue of whether each parcel must contain residential improvements.  The division in *Fifield* concluded that there was no such requirement in the statute, and that the language to the contrary in *Sullivan* was dicta. *Fifield,* ¶ 13.  We agree with both the substantive holding of *Fifield* as well as its conclusion that this language in *Sullivan* is dicta.

18

¶ 43   We also disagree with the County's position that *Fifield* holds

that the ARL does not unlawfully narrow section 39-1-102(14.4)(a).

In the County's view, the *Fifield* division cited 2 *Assessors Reference*

*Library* section 6, at 6.10-6.11, favorably and found no fault with its

guidance.  However, the issue before the division in *Fifield* was

different from the issue in this case.  *Fifield* addressed whether

separate parcels that are commonly owned and contiguous must

*each* contain a residential improvement to qualify as residential

land.  *Id.* at ¶ 11.  The division concluded the statute did not

require residential improvements on each parcel.  *Id.* at ¶ 9.

Contrary to the County's argument, the division did not hold that

the ARL's guidance was faultless.  Rather, the *Fifield* division merely

held that its interpretation of the statute "comports" and is

"consistent" with the ARL, and that "[n]othing in the PTA's

interpretation of 'residential land' indicates" a contrary conclusion.

*Id.* at ¶¶ 10-11.

¶ 44   Thus, neither *Fifield* nor *Sullivan* compels a different result

here.  In any event, we are not bound by the decision of another

division of this court.  *Valentine*, 252 P.3d at 1195.

¶ 45    In light of these determinations, we need not address the parties' remaining contentions.

### III.    Conclusion

¶ 46    The BAA's order is reversed, and the case is remanded. On remand, the BAA shall employ the correct legal standards, as we have identified them, and redetermine whether the Hogans are entitled to reclassification of Lot 3.

JUDGE DUNN and JUDGE WELLING concur.