**LOCAL UNION NO. 1 OF the INTERNATIONAL UNION OF OPERATING ENGINEERS, Plaintiff–Appellant,**

v.

**METRO WASTEWATER RECLAMATION DISTRICT, Defendant–Appellee.**

No. 93CA0022.

Colorado Court of Appeals, Div. II.

Feb. 10, 1994.

Rehearing Denied March 17, 1994.

Certiorari Denied July 18, 1994.

Berenbaum & Weinshienk, P.C., Martin D. Buckley, Denver, for plaintiff-appellant.

Inman Flynn & Biesterfeld, P.C., Joel A. Moritz, Robert J. Thomas, Denver, for defendant-appellee.

Opinion by Judge JONES.

Plaintiff, Local Union No. 1 of the International Union of Operating Engineers (Union), appeals the summary judgment dismissing its claims against defendant, Metro Wastewater Reclamation District (District), and from an order denying its motion for a writ of mandamus. We affirm.

The District is a water and sanitation district organized under the predecessor to the Metropolitan Sewage Disposal Districts Act, § 32–4–501, et seq., C.R.S. (MSDDA), and is subject to the successor statute. The Union is the certified collective bargaining representative of certain employees of the District and has represented these employees since 1969.

From 1969 to 1987, the District and the Union have negotiated and entered into successive collective bargaining agreements, the last expiring on December 1, 1990. Concerning the agreement which was to take effect at the end of December 1990, the District and the Union could not agree as to a wage survey upon which to base the new wage package. The Union rejected a preliminary market wage analysis presented by the District in December 1990. No agreement could be reached for a joint wage survey, and so the Union had a separate wage analysis conducted. This Union survey was not accepted by the District.

On September 26, 1991, the District submitted its wage determination. After discussions with the Union, this wage determination was amended on December 2, 1991, to reflect updated survey information. On May 6, 1992, the District began to pay employees based on the December 2, 1991, wage determination, retroactive to January 1, 1991.

In April 1992, the Union had filed this action in the district court seeking a judicial declaration that the District's proposed wages were not the prevailing rates for equivalent work, that the Colorado Labor Peace Act, § 8–3–101 et seq., C.R.S. (1986 Repl.Vol. 3B) (Labor Peace Act) requires the District to negotiate in good faith over wages, and that a writ of mandamus should issue compelling the District to pay appropriate wages.

On December 30, 1992, while this action was pending, the District and the Union entered into a collective bargaining agreement in which the Union accepted the December 2, 1991, wage determination, though the wage determination was not incorporated into the agreement.

The parties filed cross-motions for summary judgment. The court granted the District's motion, holding, *inter alia*, that the District was not required to negotiate over wages and denying mandamus.

This appeal followed.

I.

The Union first contends that the trial court erred in concluding that the District is not obligated to bargain with the Union over prevailing rates of pay for equivalent work. We find no error.

The Union argues that while the District is invested with the power "to enter into contracts and agreements," § 32–4–510(1)(d), C.R.S., and to "prescribe the duties of officers, agents, employees, and other persons, and fix their compensation, [so long as] the compensation of employees and officers shall

be established at prevailing rates of pay for equivalent work," § 32–4–510(1)(aa), C.R.S., this provision does not confer upon the District the power unilaterally to determine what rates of pay are prevailing or what work is equivalent.

In the Labor Peace Act, employees are granted the right to organize themselves, to join or otherwise assist labor unions, and among other things, to bargain collectively through representatives of their own free choosing. *See* § 8–3–106, C.R.S. (1986 Repl. Vol. 3B); *Communications Workers of America v. Western Electric Co.*, 191 Colo. 128, 551 P.2d 1065 (1976).

When an employer's employees are in a collective bargaining unit, such as a union, the General Assembly has required "negotiation by [the] employer and the representative of a majority of its employees ... concerning [the] terms and conditions of employment of such employees in a mutually genuine effort to reach an agreement...." Section 8–3–104(3), C.R.S. (1986 Repl.Vol. 3B). The District concedes that as a general proposition, "terms and conditions of employment" includes wages. *See* § 8–4–101(9), C.R.S. (1986 Repl.Vol. 3B) (wages defined statutorily).

Thus, the statutory delegation in the MSDDA permitting a district to fix rates of compensation conflicts with the Labor Peace Act provisions requiring negotiation on wage rates. We conclude that the trial court has correctly resolved this conflict in its findings of fact and conclusions of law.

The Labor Peace Act defines an employer to be:

a person who regularly engages the services of eight or more employees [other than those expressly exempted from being employees within the definition of 'employee' in the Labor Peace Act], and includes any person acting on behalf of any such employer within the scope of his authority.... The term does not include the state or any political subdivision thereof, [unless] the state or any political subdivision thereof acquires or operates a mass transportation system....

Section 8–3–104(12), C.R.S. (1986 Repl.Vol. 3B).

The MSDDA provides that districts, such as defendant here, "shall not be considered a political subdivision for the purposes of section 8–3–104(12)...." Section 32–4–502(8), C.R.S. Thus, the District here is an "employer" within the meaning of the Labor Peace Act and is subject to its provisions. Furthermore, the Labor Peace Act provides that its provisions prevail in the event of a conflict with any other statute. Section 8–3–120, C.R.S. (1986 Repl.Vol. 3B).

The appropriate means for construing and harmonizing statutes is set out in *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1173–74 (Colo.1991):

A court's primary task in construing [statutes] is to give effect to the legislative purpose underlying the statutory enactment[s].... In an effort to determine legislative intent, we first look to the statutory language and give words and phrases their plain and ordinary meaning.... As a general rule, a special or a specific statutory provision prevails over a general provision unless the general provision is later in time and the legislature had manifested a clear intent that the general provision should prevail. [Section 2–4–205, C.R.S. (1980 Repl.Vol. 1B).] In addition, we are obliged to construe an entire statutory scheme in a manner that gives consistent harmonious and sensible effect to all of its parts.... It must also be presumed that the General Assembly in enacting a statute intended a just and reasonable result.

*See* § 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B).

Applying these rules to the statutes in question here, we agree with the trial court's conclusion that the District is not required to negotiate or engage in collective bargaining in fixing Union employees' compensation at prevailing rates for equivalent work.

The relevant provisions of the Labor Peace Act deal generally with negotiating the terms and conditions of employment. *See* §§ 8–3–102(c), 8–3–104(3), and 8–3–106, C.R.S. (1988 Repl.Vol. 3B). On the other hand, the relevant provisions of the MSDDA are concerned specifically with fixing employee wages. As

well, these provisions go on to limit the exercise of the power to fix wages by requiring that such compensation be established at prevailing rates of pay for equivalent work. Section 32-4-510(1)(aa), C.R.S.

These statutory provisions led the trial court properly to determine that "the process of fixing compensation according to a prescribed standard is conceptually and practically different from, and incompatible with reaching an agreement as to a wage rate through the process of negotiation." The language of the MSDDA reveals the General Assembly's intention that the compensation for employees of such districts be established pursuant to its terms and not those of the Labor Peace Act.

For instance, in spite of the admonition in the Labor Peace Act that its provisions prevail in the event of conflict with the application of provisions of other statutes, the General Assembly promulgated express language to the contrary in the MSDDA. It stated that entities provided for in the MSDDA have the legislative powers "necessary or incidental to or implied from the specific powers granted" in the statutory scheme and that those specific powers "not be considered as a limitation upon any power necessary or appropriate to carry out the purpose or intent of [the MSDDA]." Section 32-4-510(1)(hh), C.R.S. The power to establish compensation for district employees is so central to the purpose of the statutory scheme that we must conclude that the General Assembly did not intend for the Labor Peace Act to limit or impede that authority under the MSDDA.

Thus, we conclude that, being aware of the Labor Peace Act which was in existence when the MSDDA was promulgated, the General Assembly intended that the MSDDA not be limited or constrained by the Labor Peace Act concerning the determination of prevailing rates of pay.

■ Our conclusion is supported by the rule of law which dictates that when conflicting statutes cannot be harmonized, that statute enacted last in time controls. *De Jiacomo v. Industrial Claim Appeals Office*, 817 P.2d 552 (Colo.App.1991).

Accordingly, we conclude that the trial court did not err in finding that the District is not required to negotiate or engage in collective bargaining in fixing employee compensation at prevailing rates for equivalent work. In view of our conclusion, we necessarily conclude that the District did not commit an unfair labor practice by refusing to bargain with the Union over prevailing rates of pay.

## II.

Similarly, we reject the Union's contention that it is entitled to a writ of mandamus directing the District to negotiate over a proper method for setting prevailing wages for equivalent work.

■ A writ of mandamus is appropriate to compel a governmental body to perform an official act specifically required by law. C.R.C.P. 106(a)(2). *Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (Colo.1977).

In considering whether to issue a writ of mandamus, Colorado courts have generally applied a three-part test: (1) the plaintiff must have a clear right to the relief sought; (2) the defendant must have a clear duty to perform the act requested; and (3) there must be no other available remedy. *Sherman v. City of Colorado Springs Planning Commission*, 763 P.2d 292, 295 (Colo.1988).

There is no dispute between the parties regarding the employees' rights to prevailing wages, nor over the District's duty to compensate employees at prevailing wages. The dispute here has been on the question of how such compensation is to be established, whether through negotiation or by unilateral employer action on the part of the District.

As discussed in the previous section, the District is not under a duty to negotiate over how such compensation is established. Therefore, the trial court did not err in failing to issue a writ of mandamus.

The judgment and order of the trial court are affirmed.

METZGER and NEY, JJ., concur.