**DENVER LOCAL 2–477, OIL, CHEMICAL & ATOMIC WORKERS' INTERNATIONAL UNION, Plaintiff–Appellant and Cross–Appellee,**

v.

**METRO WASTEWATER RECLAMATION DISTRICT, a political subdivision of the State of Colorado, Defendant–Appellee and Cross–Appellant,**

and

**Colorado Division of Labor, Defendant–Appellee.**

**No. 98CA1645.**

Colorado Court of Appeals, Div. II.

Nov. 12, 1999.

Certiorari Denied Sept. 5, 2000.*

---

* Chief Justice MULLARKEY would grant as to the following issues:

Whether the duty to engage in collective bargaining under the Colorado Labor Peace Act (CLPA)

impedes a public employer's statutory authority to set the compensation of its employees.

Whether the Metro Wastewater Reclamation District ("Metro") is required to engage in collective

bargaining regarding fringe benefits, pursuant to the CLPA, once it determines prevailing rates of compensation pursuant to its enabling statute,

the Metropolitan Sewage Disposal District Act (MSDDA).

Thomas A. Feldman, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Inman Flynn & Biesterfeld, P.C., Joel A. Moritz, Robert J. Thomas, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John D. Baird, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge RULAND.

Plaintiff, Denver Local 2–477 of the Oil, Chemical & Atomic Workers' International Union, appeals from the judgment of the district court determining that defendant, Metro Wastewater Reclamation District (Metro), was not guilty of an unfair labor practice in refusing to negotiate the use of sick leave. The Union also challenges the dismissal of its petition for judicial review of a ruling by defendant, Colorado Division of Labor, that Metro was not required to negotiate 26 other benefits.

Metro cross-appeals from the district court's ruling that the Division had jurisdiction over this dispute. The Division seeks to uphold the district court's ruling. We affirm in part, reverse in part, and remand the case for further proceedings.

Metro was established under the Metropolitan Sewage Disposal Districts Act (MSDDA), § 32–4–501 et seq., C.R.S.1999. The Union represents Metro's laboratory personnel.

In an earlier case involving a different union, a division of this court concluded that Metro was not required under the MSDDA to negotiate or engage in collective bargaining in fixing its employees' compensation. *See International Union of Operating Engineers v. Metro Wastewater Reclamation District,* 876 P.2d 82 (Colo.App.1994) (*Metro I*).

Based upon this ruling, Metro refused to negotiate with the Union regarding 28 benefits it characterized as "compensation." The Union then filed a claim with the Division alleging that Metro's failure to negotiate with respect to these benefits was an unfair labor practice and thus violated the Labor Peace Act, § 8–3–101, et seq., C.R.S.1999.

Following a hearing, an administrative law judge (ALJ) determined that the Division had jurisdiction to interpret the MSDDA in order to resolve this dispute. The ALJ then determined that Metro was not required to negotiate 26 of the benefits because those benefits fit within the definition of compensation. However, the ALJ found that the remaining two benefits, use of paid sick leave and use of shower facilities, were not items of compensation. Accordingly, the ALJ ruled that Metro committed an unfair labor practice by refusing to negotiate on those issues.

Thereafter, the Union filed a motion to modify the ALJ's findings. In response, Metro filed a motion for enlargement of time to answer the Union's objections and to file its own motion to modify the ALJ's findings. This motion was granted but the order was not mailed to any of the parties.

Metro ultimately filed its response to the Union's motion and its motion to modify the

ALJ's findings within the time limit authorized by the Division. However, based upon the belief that the ALJ's findings became the final order of the Division by operation of law, the Union filed a petition for judicial review in the district court.

Thereafter the Division entered a final order approving the findings and ruling of the ALJ. Metro filed an answer to the Union's district court petition and a cross-petition for judicial review in that court seeking review of the rulings on sick leave and use of showers. In the alternative, Metro alleged that the Division lacked jurisdiction to decide the dispute in the first instance.

Later, the district court granted the Division's motion to dismiss the Union's petition for judicial review as premature because it was filed before the Division entered its final order. Relative to Metro's cross-petition, the court ruled that the Division had jurisdiction over this dispute. However, the court determined that the Division erred in concluding that the use of sick leave was not a form of compensation. The ALJ's resolution of the shower facilities issue was affirmed, and is not an issue on appeal.

## I.

■ In its appeal, the Union first contends that the district court erred by dismissing its petition for judicial review with prejudice on the grounds that it was premature. Metro and the Division assert that the court's ruling was correct. We agree with the Union.

If, within 30 days after receipt of the ALJ's decision, the director of the Division has taken no action, then the ruling of the ALJ is deemed to be that of the Division. Department of Labor & Employment Rule 7.2.D., Code Colo. Reg. 1101–1. An aggrieved party may then seek judicial review of the Division's decision by filing a petition in the district court within 30 days pursuant to § 24–4–106, C.R.S.1999, of the Administrative Procedure Act. See § 8–3–110(8), C.R.S. 1999.

Here, as noted, the ALJ issued an order granting Metro's motion for enlargement of time to respond to the Union's objection. See § 24–4–105(14)(a)(II), C.R.S.1999. How-

ever, the order was not properly mailed to the parties. See Northern Colorado Consortium, Inc. v. Office of Rural Job Training, 728 P.2d 744 (Colo.App.1986) (if notice of a decision is not mailed with proper postage, an agency's decision is effective upon receipt of actual notice of the decision).

■ Nevertheless, even if we assume that the Union's petition was prematurely filed, absent a showing of prejudice to the other party, we conclude that dismissal of the petition was error. In our view, a premature petition for judicial review in the district court should be treated no differently than a premature notice of appeal to this court. See Kidwell v. K–Mart Corp., 942 P.2d 1280 (Colo.App.1996). This is particularly so when the problem is created by the failure of a state agency to mail its order. Hence, we conclude that the district court acquired jurisdiction to rule upon the Union's petition for judicial review once the Division's order became final. See In re Marriage of Ross, 670 P.2d 26 (Colo.App.1983).

## II.

In its cross-appeal, Metro contends that the district court erred in ruling that the Division had jurisdiction over this dispute. According to Metro, the Division lacked statutory authority to interpret the terms of the MSDDA in order to address the dispute between the Union and Metro. We disagree.

■ Our review of the district court's decision is governed by the same standard that is applicable to the district court's review of the Division's decision. See § 24–4–106(11)(e), C.R.S.1999. As pertinent here, this court may reverse the Division's decision only if it erroneously interpreted the law or exceeded its constitutional or statutory authority. See § 24–4–106(7), C.R.S.1999; Ohlson v. Weil, 953 P.2d 939 (Colo.App.1997).

■ The duties and powers of an administrative agency are determined and limited by the statutes under which it is created, and actions of an administrative agency that exceed the scope of those delegated duties and powers are void. Colorado Division of Employment & Training v. Industrial Commis-

*sion,* 665 P.2d 631 (Colo.App.1983). However, powers not expressly granted to a state regulatory agency are implied if such are necessary to carry out the agency's function and if the implied power is exercised in a reasonable manner. *See State Farm Mutual Automobile Insurance Co. v. Barnes,* 41 Colo.App. 380, 585 P.2d 929 (1978).

██ Here, the Labor Peace Act is a comprehensive statute regulating the conduct of the parties to a labor dispute. *See City of Golden v. Ford,* 141 Colo. 472, 348 P.2d 951 (1960). A "labor dispute" is defined as "any controversy . . . concerning the rights or process or details of collective bargaining." *See* § 8–3–104(13)(a), C.R.S.1999. Further, any controversy concerning unfair labor practices may be submitted to the Division. *See* § 8–3–110(1), C.R.S.1999. And, when such a dispute arises, the Division is authorized to hold hearings and to make decisions determining the rights of the parties. *See* § 8–3–110(7), C.R.S.1999. In our view, this obligation necessarily and implicitly includes the authority to interpret statutes pertinent to the dispute.

Accordingly, we agree with the district court that if the resolution of what constitutes an unfair labor practice requires the Division to interpret a statute, this action is simply a determination of the rights of the parties that the Division is authorized to make under § 8–3–110(7).

### III.

██ The Union next contends that the district court erred in concluding that the use of sick leave is "compensation" under the MSDDA. We disagree.

The MSDDA grants Metro the authority to prescribe the duties of employees and "fix their compensation . . . at prevailing rates of pay for equivalent work." *See* § 32–4–510(1)(aa), C.R.S.1999. However, the MSDDA does not define the term "compensation."

· ██ In construing § 32–4–510(1)(aa), we must ascertain and give effect to the intent of the General Assembly. In order to do so, we first review the language of the statute itself, and give the statutory terms the accepted and generally understood meanings. *People*

*v. Guenther,* 740 P.2d 971 (Colo.1987). If the meaning and application of the statute is apparent based upon the plain meaning of the words used, we need not resort to other aids in statutory construction.

Turning then to the plain meaning rule, "compensation" is defined as "[r]emuneration and *other benefits* received in return for services rendered." *Black's Law Dictionary* 277 (7th ed.1999) (emphasis supplied). We perceive no basis in the statute for not applying this general definition of the term. This definition would include paid sick leave as a benefit received in addition to remuneration.

██ In the alternative, the Union contends that even if the use of paid sick leave is "compensation," Metro is still required to negotiate on this issue. According to the Union, the opinion in *Metro I* exempts Metro from negotiating the overall rates of the compensation package, but does not exempt it from negotiating the composition of the individual benefits within the package. Again, we disagree.

The *Metro I* court held that fixing compensation according to prescribed standards under the MSDDA is incompatible with negotiation, and thus the General Assembly did not intend the Labor Peace Act to limit or impede Metro's authority to establish compensation. In the view of that division, this power was "central to the purpose of the MSDDA." *See International Union of Operating Engineers v. Metro Wastewater Reclamation District, supra,* 876 P.2d at 85.

In our view, requiring negotiation over the use of paid sick leave, even as a component of the overall wage rate, would impede Metro's authority to establish the compensation of its employees under the MSDDA.

In reaching this conclusion, we recognize that cases decided under the National Labor Relations Act have held that policies on the use of sick leave are a subject of mandatory bargaining. *See NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). However, contrary to the Union's argument, that analysis is of no assistance here in determining the statutory authority of Metro under the MSDDA.

And, unlike in *NLRB v. Parents and Friends of the Specialized Living Center*, 879 F.2d 1442 (7th Cir.1989) and *NLRB v. St. Louis Comprehensive Neighborhood Health Center, Inc.*, 633 F.2d 1268 (8th Cir.1980), the issue here is not whether the NLRB had jurisdiction over a not-for-profit health care facility funded by a federal or state agency. Instead, this case involves an express power conferred by the General Assembly upon a political subdivision to set compensation for its employees.

Accordingly, those parts of the district court's judgment are affirmed determining that the Division had jurisdiction to decide this dispute, and that paid sick leave is included as compensation. That part of the judgment dismissing the Union's petition for review of the other provisions of the Division's order is reversed, and the cause is remanded to the district court for further proceedings on the petition.

Judge CRISWELL and Judge MARQUEZ concur.