1
 2025 CO 27 American Heritage Railways, Inc. and The Durango & Silverton Narrow Gauge Railroad Company, Plaintiffs-Appellants v. Colorado Public Utilities Commission, Defendant-Appellee and La Plata County, Colorado. Intervenor-Appellee No. 24SA184
Supreme Court of Colorado, En Banc
May 27, 2025
 
           Appeal
 from the District Court District Court, City and County of
 Denver, Case No. 22CV32480 Honorable Christopher J. Baumann,
 Judge
 
 
                   
 Attorneys for Plaintiffs-Appellants: Jones & Keller, P.C.
 Edward T. Lyons, Jr. Stuart N. Bennett Nicole A. Westbrook
 Denver, Colorado
 
 2
 
                   Attorneys
 for Defendant-Appellee: Philip J. Weiser, Attorney General
 Paul C. Gomez, First Assistant Attorney General Ruth M.
 Harper, Senior Assistant Attorney General Alex J. Acerra,
 Assistant Attorney General Denver, Colorado
 
 
                   
 Attorneys for Intervenor-Appellee: Kaplan Kirsch LLP Sarah M.
 Keane Nathaniel H. Hunt Christian L. Alexander Denver,
 Colorado
 
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.
 
 3
 
          
 OPINION
 
 
          
 GABRIEL, JUSTICE
 
 
          ¶1
 Pursuant to section 40-6-115(5), C.R.S. (2024), American
 Heritage Railways, Inc. ("AHR") and its subsidiary,
 The Durango & Silverton Narrow Gauge Railroad Company
 ("DSNGR" and, collectively with AHR, the
 "Railroad"), appeal the district court's
 decision upholding the Colorado Public Utilities
 Commission's (the "PUC's") order granting
 relief to La Plata County in this land use dispute between
 the Railroad and the County. The Railroad contends that (1)
 the PUC lacked jurisdiction to interpret the applicable land
 use provision, section 30-28-127, C.R.S. (2024); (2) the
 County lacked standing to petition the PUC for the relief it
 sought; (3) the PUC deprived the Railroad of its due process
 rights in several respects; and (4)the PUC erred in its
 application of section 30-28-127.[1]
 
 4
 
          ¶2
 We now conclude that (1) the PUC had jurisdiction to
 interpret section 30-28-127, (2) the County had standing to
 petition the PUC, (3) the PUC did not deprive the Railroad of
 its due process rights, and (4) the PUC's application of
 section 30-28-127 was just and reasonable and in accordance
 with the evidence.
 
 
          ¶3
 Accordingly, we affirm the district court's judgment
 upholding the PUC's decision below.
 
 
          I.
 Facts and Procedural History
 
 
          ¶4
 The Railroad operates the narrow-gauge railroad line from
 Durango to Silverton. The PUC has authorized the Railroad to
 do so as a common carrier and to exercise all rights, powers,
 and privileges incident thereto under Colorado's public
 utilities law.
 
 
          ¶5
 In 2019, the Railroad reinstituted a previously available
 shorter route running from Rockwood to Cascade Wye. This
 shorter route gained significant popularity during the
 COVID-19 pandemic when operating restrictions limited the
 Railroad's ability to operate the full Durango to
 Silverton route.
 
 
          ¶6
 To accommodate the increased popularity of the shorter route,
 the Railroad made a number of changes to its Rockwood
 Station, which is in La Plata County.
 
 5
 
 As pertinent here, the Railroad regraded and enlarged the
 existing parking lot at the station, removed a fence on its
 right of way, and added portable toilets and tents to
 accommodate passengers either waiting to board the train or
 exiting from it.
 
 
          ¶7
 Thereafter, the County sent AHR and DSNGR notices alleging
 that these changes violated the County's land use code.
 The County thus demanded that the Railroad correct the
 violations or submit either an application for a certificate
 of nonconforming status or an application for a sketch plan
 as the first step in obtaining a permit for the proposed
 operations at the expanded station.
 
 
          ¶8
 The Railroad then sued the County in La Plata County District
 Court. As pertinent here, the Railroad's complaint sought
 (1) a declaratory judgment confirming that the Railroad was
 not subject to the County's land use code because the
 County lacked jurisdiction to apply its code to the
 Railroad's existing land and structures and (2) an
 injunction prohibiting the County from enforcing its notices
 of violations and from seeking to regulate or interfere with
 the Railroad's operations.
 
 
          ¶9
 While this district court case was pending, the County filed
 with the PUC a petition for a declaratory ruling. The
 petition sought an order determining, as pertinent here, that
 (1) the Railroad's new route constituted a new facility,
 plant, or system, or the extension of its existing facility,
 plant, or system, thus requiring
 
 6
 
 a new certificate of public convenience and necessity under
 section 40-5-101, C.R.S. (2024); and (2) the physical changes
 in the use of the Rockwood Station constituted extensions,
 betterments, or additions under section 30-28-127, requiring
 compliance with the County's land use code.
 
 
          ¶10
 Section 30-28-127 provides:
 
 
 None of the provisions of this part 1 [authorizing counties
 to adopt land use plans] shall apply to any existing
 building, structure, or plant or other equipment owned or
 used by any public utility. After the adoption of a plan, all
 extensions, betterments, or additions to buildings,
 structures, or plant or other equipment of any public utility
 shall only be made in conformity with such plan, unless,
 after public hearing first had, the public utilities
 commission orders that such extensions, betterments, or
 additions to buildings, structures, or plant or other
 equipment are reasonable and that such extensions,
 betterments, or additions may be made even though they
 conflict with the adopted plan.
 
 
          ¶11
 The County's petition alleged that the clearing of land
 and construction of new parking facilities that expanded the
 existing parking area's footprint, the appropriation of a
 neighboring driveway as part of the parking lot's
 expansion, and the installation of portable toilets
 constituted extensions, improvements, betterments, or
 additions to existing facilities that, pursuant to section
 30-28-127, required conformance with the County's land
 use code. Furthermore, under the heading "Relief
 Requested," the petition alleged, "That AHR and
 DSNGR's physical changes in use of the Rockwood Station
 and Subject Properties described
 
 7
 
 herein constitute 'extensions',
 'betterments', and/or 'additions' subject to
 § 30-28-127, C.R.S. requiring compliance with the
 County's existing Code."
 
 
          ¶12
 The PUC accepted the petition and established a thirty-day
 notice and intervention period. The Railroad then filed a
 notice of intervention as of right in the proceedings. This
 notice stated that the Railroad contested and opposed the
 petition and generally set forth the bases on which it did
 so. The notice, however, did not request a hearing on the
 matter.
 
 
          ¶13
 Shortly after the PUC accepted the County's petition, the
 County filed a motion in the La Plata County District Court
 to stay the district court proceedings pending the resolution
 of its PUC petition. The court granted this motion, finding
 that "it is warranted to stay the case until the PUC
 decides the scope of its own jurisdiction."
 
 
          ¶14
 The PUC subsequently referred the County's petition to an
 administrative law judge ("ALJ"), who then issued
 an order requiring the parties to file briefs regarding the
 petition's merits. This order reiterated the
 petition's requested relief, noting, among other things,
 "[T]he County requests the Commission declare that
 DSNGR's physical changes to the Rockwood Station
 constitute extensions, betterments, or additions subject to
 § 30-28-127, C.R.S., requiring compliance with the
 County's existing land use code." The order further
 directed that the parties' briefs address (1) the
 PUC's jurisdiction over the pending dispute; (2) whether
 the
 
 8
 
 new route requires a new certificate of public convenience
 and necessity from the PUC; (3) if so, the remedies that the
 PUC has the authority to order; and (4) "any other
 issues the parties believe the Commission should address in
 this proceeding." Finally, the order directed the
 Railroad to file "a brief in response to the
 Petition" and the County thereafter to file a
 "reply brief," setting deadlines for each.
 
 
          ¶15
 After receiving briefs, affidavits, and exhibits from the
 parties and comments from members of the public, the ALJ
 issued a Recommended Decision. In this Recommended Decision,
 the ALJ first concluded that the County had standing to file
 its petition for a declaratory order because an actual
 controversy existed between the County and the Railroad.
 Next, the ALJ interpreted section 30-28-127 and concluded
 that that provision authorized the County to regulate the
 Railroad's land use activities at the Rockwood Station
 and to enforce the County's land use code.
 
 
          ¶16
 The ALJ then concluded that the PUC had jurisdiction to
 determine whether the changes at the Rockwood Station
 constituted extensions, betterments, or additions under
 section 30-28-127. Accordingly, the ALJ proceeded to find
 that (1) the Railroad had "made physical changes to
 expand the driveway, significantly expanded the size and use
 of the parking lot, and installed portable toilets and tents
 at the Rockwood Station"; and (2) the Railroad's
 "physical changes to the
 
 9
 
 structures, plant, and other equipment at the Rockwood
 Station constitute 'extensions, betterments, or
 additions' within the meaning of those terms in §
 30-28-127, C.R.S."
 
 
          ¶17
 Finally, the ALJ considered whether the changes at issue,
 which constituted extensions, betterments, or additions to
 structures or other equipment within the meaning of section
 30-28-127, also constituted "the construction of a new
 facility, plant, or system or the extension of . . . [a]
 facility, plant, or system" of the Railroad under
 section 40-5-101(1)(a), such that the Railroad needed to
 apply for a new certificate of public convenience and
 necessity under the latter provision. (Omission and
 alteration in original.) The ALJ concluded that they were not
 and that the Railroad was not required to apply for such a
 new certificate.
 
 
          ¶18
 The Railroad filed exceptions to the ALJ's Recommended
 Decision with the PUC, arguing, in pertinent part, that the
 ALJ had (1) incorrectly concluded that the PUC had
 jurisdiction to decide whether an action constitutes an
 "extension, betterment, or addition" under section
 30-28-127; (2) incorrectly concluded that the County had
 standing to seek its requested declaratory ruling; (3)
 erroneously concluded that the physical changes that the
 Railroad had made at the Rockwood Station constituted
 extensions, betterments, or additions; (4) deprived the
 Railroad of procedural due process by deciding that the
 changes constituted extensions, betterments, or additions
 without giving the Railroad adequate notice and an
 
 10
 
 opportunity to be heard regarding that issue; and (5)
 erroneously failed to hold an evidentiary hearing on the
 petition.
 
 
          ¶19
 The PUC subsequently conducted live deliberations on this
 matter during its Commissioners' Weekly Meeting and
 thereafter denied the Railroad's exceptions, upholding
 the Recommended Decision in its entirety.
 
 
          ¶20
 In so ruling, the PUC first determined that the County had
 standing to seek from the PUC the resolution of the
 parties' dispute and that the PUC had jurisdiction to
 decide whether the Railroad's physical changes to the
 Rockwood Station constituted extensions, betterments, or
 additions under section 30-28-127. The PUC further concluded,
 based on the plain language of section 30-28-127 and the
 undisputed facts in the pleadings, that the ALJ had
 reasonably found that the Railroad's changes to the
 Rockwood Station constituted extensions, betterments, or
 additions under section 30-28-127.
 
 
          ¶21
 The PUC also rejected the Railroad's argument that the
 ALJ had erred by declining to hold an evidentiary hearing.
 The PUC observed that no statute or rule required such a
 hearing, the Railroad had not requested one, and the Railroad
 had had a fair opportunity to advance its positions through
 its written briefing.
 
 
          ¶22
 Finally, the PUC perceived no merit to the Railroad's
 contention that the ALJ had decided that the changes to the
 Rockwood Station constituted extensions, betterments, or
 additions without providing the Railroad with adequate notice
 
 11
 
 and an opportunity to respond. The PUC noted that the
 County's petition clearly requested findings on this
 question and the ALJ's briefing order had broadly
 directed briefing on the merits and on any other issues that
 the parties believed should be addressed.
 
 
          ¶23
 The Railroad then sought judicial review of the PUC's
 decision in the district court, and the district court
 affirmed. Am. Heritage Rys., Inc. v. Colo. Pub. Utils.
 Comm'n, No. 22CV32480, at 13 (Dist. Ct., City &
 Cnty. of Denver, May 6, 2024). The district court noted the
 broad authority granted to the PUC and concluded that the PUC
 had regularly pursued that authority in determining that it
 had the power to interpret and apply section 30-28-127.
 Id. at 6-7. The court next concluded that the County
 had standing because it had a legally protected interest in
 regulating land use and development through its land use
 code, an interest that was injured due to the Railroad's
 refusal to comply with the County's enforcement efforts.
 Id. at 8. The court further determined that no
 hearing was required and that the record supported the
 PUC's finding that the Railroad had notice that the
 question of whether the changes constituted extensions,
 betterments, or additions was before the ALJ even without an
 explicit request for briefing on the question. Id.
 at 10-11. Finally, the court concluded that the PUC had
 regularly pursued its authority in determining that the
 changes made by the Railroad to the Rockwood
 
 12
 
 Station constituted extensions, betterments, or additions for
 purposes of section 30-28-127. Id. at 13.
 
 
          ¶24
 The Railroad now appeals to this court.
 
 
          II.
 Analysis
 
 
          ¶25
 We begin by setting forth the applicable standard of review.
 We then address each of the Railroad's contentions on
 appeal and determine that in each instance, the PUC regularly
 pursued its authority in reaching its conclusions.
 
 
          A.
 Standard of Review
 
 
          ¶26
 Because the PUC is an expert agency with fact-finding and
 policymaking authority, informed by evidence and arguments
 presented on the record, judicial review of PUC decisions is
 relatively narrow. CF&I Steel, L.P. v. Pub. Utils.
 Comm'n, 949 P.2d 577, 584 (Colo. 1997). Courts
 review PUC decisions solely to determine whether (1) the PUC
 "has regularly pursued its authority," including a
 determination as to whether the PUC decision at issue
 violates any rights of the petitioner under the United States
 or Colorado Constitutions; (2) the PUC's decision is
 "just and reasonable"; and (3) the PUC's
 "conclusions are in accordance with the evidence."
 § 40-6-115(3).
 
 
          ¶27
 The PUC has regularly pursued its authority when its factual
 findings and its conclusions were based on adequate evidence
 and it reached its decision by applying the appropriate
 constitutional and legislative standards.
 
 13
 
 Danks v. Colo. Pub. Utils. Comm'n, 2022 CO 26,
 ¶ 42, 512 P.3d 692, 699. We give deference to the
 PUC's interpretation of applicable statutes and
 regulations, but its interpretations of law do not control
 our legal conclusions. Pub. Serv. Co. of Colo. v.
 Trigen-Nations Energy Co., 982 P.2d 316, 322
 (Colo. 1999).
 
 
          B.
 The PUC Had Jurisdiction
 
 
          ¶28
 The Colorado Constitution vests the PUC with broad authority
 to regulate public utilities. See Colo. Const. art.
 XXV. In addition, section 40-3-102, C.R.S. (2024), provides,
 in pertinent part:
 
 
 The power and authority is hereby vested in the public
 utilities commission of the state of Colorado . . . to
 generally supervise and regulate every public utility in this
 state[] and to do all things, whether specifically designated
 in articles 1 to 7 of this title or in addition thereto,
 which are necessary or convenient in the exercise of such
 power . . . .
 
 
          ¶29
 Our case law has consistently confirmed this broad authority.
 We have noted that it is "well-established that agencies
 possess implied and incidental powers filling the interstices
 between express powers to effectuate their mandates."
 Hawes v. Colo. Div. of Ins., 65 P.3d 1008, 1016
 (Colo. 2003). And regarding the PUC in particular, we have
 observed that the PUC's "authority under article XXV
 is not narrowly confined but extends to incidental powers
 which are necessary to enable it to regulate public
 utilities." Mountain States Tel. & Tel. Co. v.
 Pub. Utils. Comm'n, 763 P.2d 1020, 1025 (Colo.
 1988).
 
 14
 
          ¶30
 Because an agency possesses implied powers that are necessary
 to execute its functions, it has the authority to interpret
 statutes pertinent to the dispute before it. See Denver
 Loc. 2-477, Oil, Chem. & Atomic Workers'
 Int'l Union v. Metro Wastewater Reclamation Dist., 7
 P.3d 1042, 1045-46 (Colo.App. 1999) (rejecting a contention
 that the Colorado Division of Labor lacked jurisdiction to
 interpret the Metropolitan Sewage Disposal Districts Act and
 concluding that the Division had the authority to interpret
 that statute because it was pertinent to the labor dispute
 before it); see also Prospect 34, LLC v. Gunnison Cnty.
 Bd. of Cnty. Comm'rs, 2015 COA 160, ¶¶
 24-26, 363 P.3d 819, 823 (rejecting an argument that the
 Board of Assessment Appeals lacked the authority to interpret
 statutes in title 32, concerning special districts, and
 concluding that the Board must be able to interpret statutes
 concerning the legality of taxes).
 
 
          ¶31
 Here, section 30-28-127 was pertinent to the dispute before
 the PUC because the County had alleged that it could regulate
 the changes to the Rockwood Station as extensions,
 betterments, or additions to buildings, structures, or plant
 or other equipment pursuant to that provision. Thus, as the
 agencies in Prospect 34 and Denver Local
 2-477 did, the PUC here validly exercised its
 necessary authority to interpret a statute pertinent to the
 dispute before it in determining whether the changes to the
 Rockwood Station constituted extensions, betterments, or
 additions under section 30-28-127.
 
 15
 
          ¶32
 Furthermore, interpreting section 30-28-127 was necessary and
 incidental to the PUC's authority to adjudicate the
 County's petition. Section 24-4-105(11), C.R.S. (2024),
 provides, in pertinent part, "Every agency shall provide
 by rule for the entertaining, in its sound discretion, and
 prompt disposition of petitions for declaratory orders to
 terminate controversies or to remove uncertainties as to the
 applicability to the petitioners of any statutory provision
 or of any rule or order of the agency." Pursuant to
 section 24-4-105(11) and consistent with it, the PUC adopted
 Pub. Utils. Comm'n, 4 Colo. Code Regs. 723-1:1304(f)(II)
 (2025) ("Rule 1304(f)(II)"), which provides, in
 pertinent part, "The Commission may issue a declaratory
 order to terminate a controversy or to remove an uncertainty
 affecting a petitioner with regard to any tariff, statutory
 provision, or Commission rule, regulation, or order."
 
 
          ¶33
 Section 24-4-105(11) and Rule 1304(f)(II) thus direct the PUC
 to adjudicate petitions for declaratory orders regarding the
 applicability to the petitioners of a statutory provision.
 And to do so, the agency must have the authority to interpret
 that statutory provision. Interpreting section 30-28-127 here
 was thus necessary and incidental to the PUC's authority
 to adjudicate the County's petition for a declaratory
 order.
 
 
          ¶34
 We are not persuaded otherwise by the Railroad's contrary
 interpretations of section 24-4-105(11) and Rule 1304(f)(II),
 which, according to the Railroad,
 
 16
 
 authorize the PUC to interpret only its own statutes, that
 is, those found in the public utilities law. In section
 24-4-105(11), "of the agency" modifies only
 "any rule or order" and does not modify "any
 statutory provision" because "or of" separates
 the former from the latter. Similarly, in Rule 1304(f)(II),
 because "Commission" precedes only "rule,
 regulation, or order" and not "statutory
 provision," the word "Commission" modifies
 only the former and not the latter. Thus, although the PUC
 must limit its adjudication of petitions regarding the
 applicability of rules, regulations, and orders to its own
 rules, regulations, and orders, its authority to adjudicate
 petitions regarding the applicability of statutes contains no
 such limitation. The sole limitation is whether interpreting
 the pertinent statute or statutes is necessary and incidental
 to the PUC's carrying out its authority. Mountain
 States Tel. & Tel. Co., 763 P.2d at 1025; Denver
 Loc. 2-477, 7 P.3d at 1045-46; Prospect
 34, ¶¶ 24-26, 363 P.3d at 823.
 
 
          ¶35
 Finally, we note that section 30-28-127 itself raises the
 issue of the PUC's jurisdiction. The PUC has the
 authority to determine that a public utility's
 extensions, betterments, or additions to buildings,
 structures, or plant or other equipment are reasonable and
 may be made even though they conflict with a county's
 land use plan. § 30-28-127. For the PUC to make this
 determination, however, changes must constitute extensions,
 betterments, or additions to buildings, structures, or plant
 or other equipment. The PUC, like any tribunal,
 
 17
 
 "has jurisdiction to determine the facts on which its
 own jurisdiction depends and to make a jurisdictional ruling
 based on the facts." Keystone, a Div. of Ralston
 Purina Co. v. Flynn, 769 P.2d 484, 488 n.6 (Colo. 1989).
 It would make little sense to grant the PUC the authority to
 make the reasonableness determination provided for in section
 30-28-127 without also allowing it to determine whether, on
 the facts of a particular case, it may exercise that
 authority.
 
 
          ¶36
 We likewise are unpersuaded by the Railroad's other
 jurisdictional arguments, which we address briefly in turn.
 
 
          ¶37
 First, the Railroad argues that the PUC usurped judicial
 authority by interpreting section 30-28-127. The Railroad
 contends that the PUC's authority is legislative and that
 judicial power is vested exclusively in the courts. In
 support of this contention, the Railroad primarily points to
 People v. Swena, 296 P. 271, 272 (Colo. 1931), in
 which we concluded that the PUC lacked the power to punish
 for contempt because that power is a judicial power within
 the meaning of our constitution. We noted there, however,
 that the PUC performs a "quasi judicial function"
 involving hearing evidence, ascertaining facts, and
 exercising judgment and discretion. Id. Similarly,
 we have described agency adjudicatory proceedings as those
 that "affect a specific party and resolve particular
 issues of disputed fact by applying previously determined
 rules or policies to the circumstances of the case."
 Colo. Off. of Consumer Couns. v. Mountain States Tel.
 & Tel. Co., 816 P.2d 278, 284 (Colo. 1991).
 
 18
 
 Thus, although the PUC lacks some of the powers exercised by
 courts, such as the authority to punish for contempt, it
 exercises quasi-judicial power to do precisely what it did
 here, namely, to ascertain facts and apply existing law to
 those facts.
 
 
          ¶38
 Second, the Railroad contends that the PUC violated the
 "priority of jurisdiction" rule. That rule provides
 that when dual actions involving the same subject matter and
 substantially the same parties are instituted, the action
 filed first has "priority of jurisdiction" and the
 second action must be stayed pending the resolution of the
 first action. Wiltgen v. Berg, 435 P.2d 378, 381
 (Colo. 1967). Here, however, the La Plata County District
 Court, in which the Railroad filed the first action, stayed
 its own proceedings after the County filed the second action
 before the PUC, so that the PUC could determine its own
 jurisdiction. We discern nothing that precluded the second
 tribunal, here the PUC, from proceeding to adjudication when
 the first tribunal determined that staying its own
 proceedings was warranted and appropriate, as the district
 court did here.
 
 
          ¶39
 For these reasons, we conclude that the PUC had jurisdiction
 to determine whether the changes to the Rockwood Station
 constituted "extensions, betterments, or additions to
 buildings, structures, or plant or other equipment"
 under section 30-28-127.
 
 19
 
          C.
 The County Had Standing
 
 
          ¶40
 A declaratory judgment action must be premised on an actual
 controversy. Farmers Ins. Exch. v. Dist. Ct., 862
 P.2d 944, 947 (Colo. 1993). To establish standing in a
 declaratory judgment action, a plaintiff must show that it
 suffered an injury-in-fact to a legally protected or
 cognizable interest. Id. The injury may be either
 tangible (e.g., physical or economic harm) or intangible
 (e.g., the deprivation of a legally created right).
 Defend Colo. v. Polis, 2021 COA 8, ¶ 23, 482
 P.3d 531, 537.
 
 
          ¶41
 The same standard applies in an action before an
 administrative agency. See Utah Motel Assocs. v. Denver
 Cnty. Bd. of Comm'rs, 844 P.2d 1290, 1294-95
 (Colo.App. 1992) (concluding that a taxpayer demonstrated
 injury to a legally protected right and therefore had
 standing in an action before the Board of Assessment
 Appeals).
 
 
          ¶42
 Because the county planning statutory scheme authorizes
 counties to make and enforce land development and zoning
 regulations, a county has a legally protected interest in
 enforcing its land use code. See Douglas Cnty. Bd. of
 Comm'rs v. Pub. Utils Comm'n, 829 P.2d 1303,
 1309 (Colo. 1992). Thus, like the county in Douglas
 County, the County here had a legally protected interest
 in making and enforcing its land use code. Furthermore,
 because the County alleged that the Railroad had not complied
 with any of its enforcement efforts, it alleged an
 injury-in-fact in the form of a deprivation of its legally
 created right to enforce its
 
 20
 
 code. See Defend Colo., ¶ 23, 482 P.3d at 537.
 The County therefore established standing here.
 
 
          ¶43
 Again, we are unconvinced by the Railroad's arguments to
 the contrary.
 
 
          ¶44
 The Railroad contends that the County lacked standing to file
 its petition for a declaratory order because section
 24-4-105(11) authorizes the PUC to adjudicate petitions
 "to terminate controversies or to remove uncertainties
 as to the applicability to the petitioners of any
 statutory provision," yet the County's petition
 concerned the applicability of section 30-28-127 to the
 Railroad, not the County. (Emphasis added.) Similarly, the
 Railroad argues that Rule 1304(f)(II) authorizes the PUC to
 "issue a declaratory order to terminate a controversy or
 to remove an uncertainty affecting a petitioner with
 regard to any . . . statutory provision," yet, in the
 Railroad's view, the petition concerned the effect of
 section 30-28-127 on the Railroad, not the petitioning
 County. (Emphasis added.) We disagree because, in our view,
 the County's petition complied with both section
 24-4-105(11) and Rule 1304(f)(II).
 
 
          ¶45
 As to the statute, a controversy existed regarding the
 applicability of section 30-28-127 to the County (in addition
 to the Railroad) because the County and the Railroad
 disagreed about whether the County could enforce its land use
 code with respect to the changes to the Rockwood Station. The
 petition thus satisfied section 24-4-105(11). Similarly, this
 controversy affected the County as required by
 
 21
 
 Rule 1304(f)(II) because it concerned whether the County
 could enforce its land use code with respect to the changes
 to the Rockwood Station.
 
 
          ¶46
 The Railroad further argues that Defend Colorado,
 ¶ 33, 482 P.3d at 540, compels the conclusion that the
 County lacked standing. In that case, a division of the court
 of appeals concluded that a petitioner lacked standing
 because the agency could not grant the relief sought and
 therefore the petitioner suffered no injury to a legally
 protected interest. Id. Here, however, we have
 concluded that the PUC had jurisdiction to grant the relief
 sought by the County. Thus, Defend Colorado
 is inapposite.
 
 
          ¶47
 Accordingly, we conclude that the County had standing to file
 its petition for a declaratory order before the PUC.
 
 
          D.
 The PUC Did Not
 Violate the
 Railroad's Due
 Process Rights
 
 
          ¶48
 The Railroad next contends that the PUC violated its due
 process rights in several respects. Due process requires
 adequate notice and an opportunity to be heard.
 Carestream Health, Inc. v. Colo. Pub. Utils.
 Comm'n, 2017 CO 75, ¶ 24, 396 P.3d 669, 673. A
 presumption of regularity traditionally attaches to
 administrative acts such that, in civil proceedings, the
 adverse party has the burden of producing evidence sufficient
 to rebut that presumption. People v. Gallegos, 692
 P.2d 1074, 1078 (Colo. 1984). We address each of the
 Railroad's contentions in turn and conclude that the PUC
 did not violate the Railroad's due process rights.
 
 22
 
          1.
 Notice
 
 
          ¶49
 The Railroad argues that the ALJ's briefing order did not
 adequately notify it that the ALJ would consider the issue of
 whether the changes to the Rockwood Station constituted
 extensions, betterments, or additions to buildings,
 structures, or plant or other equipment. We are unpersuaded.
 
 
          ¶50
 The County's petition alleged that certain changes to the
 Rockwood Station constituted extensions, improvements,
 betterments, or additions to existing facilities that
 required conformance with the County's land use code
 under section 30-28-127. Furthermore, under the heading
 "Relief Requested," the petition alleged,
 "That AHR and DSNGR's physical changes in use of the
 Rockwood Station and Subject Properties described herein
 constitute 'extensions', 'betterments',
 and/or 'additions' subject to § 30-28-127,
 C.R.S. requiring compliance with the County's existing
 Code."
 
 
          ¶51
 The ALJ's briefing order reiterated this requested
 relief: "[T]he County requests the Commission declare
 that DSNGR's physical changes to the Rockwood Station
 constitute extensions, betterments, or additions subject to
 § 30-28-127, C.R.S., requiring compliance with the
 County's existing land use code." The order then
 stated that the ALJ had determined that the parties should
 file briefs regarding "the merits of the Petition."
 It further directed the parties to brief certain issues, and
 although the order did not specifically list the issue of
 whether the
 
 23
 
 changes constituted extensions, betterments, or additions, it
 did demand that the parties brief "any other issues the
 parties believe the Commission should address in this
 proceeding."
 
 
          ¶52
 In our view, the petition and briefing order both provided
 adequate notice to the Railroad that the question of whether
 the changes to the Rockwood Station constituted extensions,
 betterments, or additions was before the ALJ. The petition
 and briefing order both made clear that the County sought
 findings on this question, and the briefing order indicated
 that the parties should file briefing on "the
 merits," even if it did not specifically enumerate this
 issue. Furthermore, we note that the Railroad stated in its
 brief before the ALJ that, if the County raised "new
 issues" in its reply brief, then the Railroad reserved
 the right to respond and would seek leave from the ALJ to do
 so. It does not appear that the Railroad did so after being
 served with the County's brief, which argued that the PUC
 should find that the changes to the Rockwood Station
 constituted extensions, betterments, or additions. The
 Railroad's choice not to brief this issue does not mean
 that it lacked notice that the issue was before the ALJ.
 
 
          2.
 Hearing
 
 
          ¶53
 The Railroad next argues that the PUC deprived it of due
 process by declining to hold a hearing. We need not address
 the question of whether the
 
 24
 
 Railroad had a right to a hearing in this petition for a
 declaratory order proceeding, however, because the Railroad
 never requested a hearing.
 
 
          ¶54
 Pub. Utils. Comm'n, 4 Colo. Code Regs. 723-1:1401(a)
 (2025) ("Rule 1401(a)") governs intervention in PUC
 proceedings. It provides, in pertinent part:
 
 
 If a person wishes to intervene and to request a hearing,
 that person's intervention as of right or motion to
 intervene by permission must state that the application or
 petition is contested or opposed, must give reason why the
 application or petition is contested or opposed, and must
 explicitly request a hearing.
 
 
 Id. (emphasis added).
 
 
          ¶55
 Here, the Railroad's notice of intervention as of right
 cited Rule 1401(a) and, consistent with that rule, stated
 that the Railroad contested and opposed the petition and
 explained why it did so. The notice, however, did not request
 a hearing. Nor did the Railroad request a hearing at any
 other point while the petition was pending before the ALJ.
 Rather, the Railroad raised the issue for the first time in
 its exceptions to the ALJ's Recommended Decision.
 
 
          ¶56
 Because the Railroad did not request a hearing as required by
 Rule 1401(a), the ALJ did not err by not holding a hearing.
 
 
          3.
 The Railroad's
 Remaining Contentions
 
 
          ¶57
 The Railroad contends that the PUC deprived it of due process
 in several other respects. We address and reject each of
 these arguments in turn.
 
 25
 
          ¶58
 The Railroad first argues that the PUC unlawfully accepted
 the County's petition without notice to the Railroad. The
 PUC entertains petitions for declaratory orders in its
 discretion. § 24-4-105(11). Furthermore, the Railroad
 cites no applicable authority, and we have seen none,
 suggesting that the PUC must provide notice before accepting
 a petition for a declaratory ruling.
 
 
          ¶59
 Pub. Utils. Comm'n, 4 Colo. Code Regs. 723-1:1206(a)
 (2025) generally requires the PUC to provide notice of
 applications or petitions to any person who may be affected
 by the grant or denial of the application or petition.
 Subsection (c)(III), however, provides, in pertinent part,
 "Nothing in paragraph (a) of this rule shall require the
 Commission to provide notice of . . . a petition for
 declaratory order or a petition for rulemaking, until the
 Commission in its discretion opens a proceeding regarding
 such a petition." Pub. Utils. Comm'n, 4 Colo. Code
 Regs. 723-1:1206(c)(III) (2025) ("Rule
 1206(c)(III)"). Here, the PUC complied with Rule
 1206(c)(III) by providing notice to the Railroad
 after it had accepted the petition and opened a
 proceeding regarding it.
 
 
          ¶60
 The Railroad also argues that the PUC deprived it of due
 process by requiring it to file briefing with the ALJ before
 the County did so. As a factual matter, the County
 did file the first explanation of its position when
 it filed its petition. Thus, we believe that it was proper
 for the ALJ to order the Railroad to file a "brief in
 response to the Petition" and for the County thereafter
 to file a
 
 26
 
 "reply brief." The Railroad cites no applicable
 authority, and we are aware of none, that suggests that such
 a briefing procedure is impermissible or shifts the burden of
 proof. To the contrary, providing the County with the
 opportunity to file the final brief is consistent with its
 holding the burden of persuasion. See, e.g.,
 C.R.C.P. 121, § 1-15(1)(c) (allowing the moving party to
 file the final reply brief); C.A.R. 28(c) (allowing the
 appellant to file the final reply brief).
 
 
          ¶61
 The Railroad also contends that the PUC impermissibly relied
 on guidance from a member of its advisory staff in reaching
 its decision. The Railroad provides little detail regarding
 the facts underlying this argument, but the PUC has
 represented in its briefing that the argument refers to the
 presentation by the Chief of Rail and Transit Safety and a
 senior assistant attorney general, who acted as advisors in
 this matter, at the PUC's public meeting on the petition.
 We have previously determined that the PUC may reasonably
 choose to have advisory staff, with staff members'
 expertise, assist its Commissioners in their deliberations,
 even though the Commissioners remain the decisionmakers and
 may reject any or all of the advisory staff's analysis or
 recommendations. See Bd. of Cnty. Comm'rs v. Colo.
 Pub. Utils. Comm'n, 157 P.3d 1083, 1085, 1093 (Colo.
 2007). The Railroad has presented no evidence or law
 suggesting that the use of this established practice in these
 proceedings was improper.
 
 27
 
          ¶62
 Lastly, the Railroad contends that the PUC failed to include
 the transcript of the PUC's public meeting in the record
 that it certified for judicial review and disabled access to
 the recording of the meeting. The Commissioners'
 deliberations and the presentations by its advisory staff do
 not constitute evidence that must be included in the record.
 Id. at 1093. In any event, the PUC has represented
 that it records its meetings as a courtesy and generally
 maintains the recordings for two years. The recording of the
 meeting that occurred in this case is currently available on
 the PUC's website.
 
 
          ¶63
 For all of these reasons, we conclude that the PUC did not
 deprive the Railroad of due process in this case.
 
 
          E.
 The PUC's Conclusion Was
 Just and
 Reasonable and Supported by the
 Evidence
 
 
          ¶64
 Finally, we conclude that the PUC's determination that
 the changes to the Rockwood Station constituted extensions,
 betterments, or additions to buildings, structures, or plant
 or other equipment was just and reasonable and in accordance
 with the evidence.
 
 
          ¶65
 Before this court, the Railroad primarily argues that the
 changes did not constitute extensions, betterments, or
 additions to buildings, structures, or plant or other
 equipment because they were not changes to any
 "buildings, structures, or plant or other
 equipment." Although it does not appear that the
 Railroad raised this argument below, we will briefly address
 it. And because the parties have
 
 28
 
 focused their arguments before us on the changes to the
 Rockwood Station's parking lot, we will do the same.
 
 
          ¶66
 An "extension" is "[a]n increase, enlargement,
 or augmentation." Extension, Black's Law
 Dictionary (12th ed. 2024). The Railroad does not dispute
 that it enlarged its parking lot.
 
 
          ¶67
 And a parking lot may constitute a "structure." In
 Clark v. Town of Estes Park, 686 P.2d 777,
 779 n.5 (Colo. 1984), we defined "structure" as
 "something constructed or built" and concluded that
 a parking lot fit that definition. (Quoting
 Structure, Webster's International Dictionary
 (3d ed. 1961)). Furthermore, because section 30-28-127
 delineates "structures" separately from
 "buildings," those two terms must have different
 meanings. In fact, "building" is defined as
 "[a] structure with walls and a roof, esp. a permanent
 structure," Building, Black's Law
 Dictionary (12th ed. 2024), suggesting that a structure need
 not have walls and a roof, as a parking lot does not.
 
 
          ¶68
 Accordingly, we perceive no error in the PUC's finding
 that the enlargement of the parking lot at issue here was an
 extension, betterment, or addition to a building, structure,
 or plant or other equipment.
 
 
          ¶69
 The Railroad's remaining arguments on this issue are
 unconvincing.
 
 
          ¶70
 The Railroad contends that the changes to the Rockwood
 Station cannot constitute extensions, betterments, or
 additions to buildings, structures, or plant
 
 29
 
 or other equipment because they are temporary. But section
 30-28-127 does not contain any temporal qualifier, and we
 cannot read one into the statute. See People v.
 Howell, 2024 CO 42, ¶ 8, 550 P.3d 679, 683 (noting
 that we may not add or subtract words from a statute).
 Furthermore, the above-quoted definition of
 "building" as "[a] structure with walls and a
 roof, esp. a permanent structure," Building,
 Black's Law Dictionary, makes clear that a structure may,
 but need not, be permanent.
 
 
          ¶71
 The Railroad further argues that "extension" should
 have the same meaning in section 30-28-127 as it does in
 section 40-5-101(1)(a), which governs changes that require a
 certificate of public convenience and necessity and which the
 ALJ concluded did not apply to the changes here.
 
 
          ¶72
 Section 40-5-101(1)(a) provides, in pertinent part, "A
 public utility shall not begin the construction of a new
 facility, plant, or system or the extension of its facility,
 plant, or system without first obtaining from the commission
 a certificate that the present or future public convenience
 and necessity require, or will require, the construction or
 extension." Even if "extension" had the same
 meaning in this provision as it has in section 30-28-127,
 however, the extensions concern different things.
 Specifically, section 30-28-127 concerns "extensions,
 betterments, or additions to buildings, structures, or plant
 or other equipment." Section 40-5-101(1)(a), in
 contrast, concerns "the extension of [a public
 utility's] facility,
 
 30
 
 plant, or system." The ALJ thus could, and did,
 reasonably conclude that the changes to the Rockwood Station
 satisfied the former but did not satisfy the latter. ¶73
 Accordingly, we conclude that the PUC's determination
 that the changes to the Rockwood Station constituted
 extensions, betterments, or additions to buildings,
 structures, or plant or other equipment was just and
 reasonable and in accordance with the evidence.
 
 
          III.
 Conclusion
 
 
          ¶74
 For these reasons, we conclude that the PUC regularly pursued
 its authority in reaching its decision.
 
 
          ¶75
 Accordingly, we affirm the district court's judgment
 upholding the PUC's decision below.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, the Railroad raises the
 following issues:
 
 
 1. Whether the PUC violated Article III of the
 Colorado Constitution by exercising judicial power to
 interpret and apply section 30-28-127, which is not part of
 the Public Utilities Law and governs land use regulation in a
 county.
 
 
 2. Whether the County lacked standing to seek, and the
 PUC lacked jurisdiction to issue, a declaratory ruling
 interpreting and applying C.R.S. § 30-28-127, which is
 not part of the Public Utilities Law and governs land use
 regulation in a county.
 
 
 3. Whether the PUC violated DSNGR's constitutional
 right to due process of law by issuing the declaratory ruling
 sought by the County without providing proper notice and
 without holding an evidentiary hearing.
 
 
 4. Whether the PUC acted unlawfully in ruling that
 DSNGR's changed use of the Rockwood Station in providing
 passenger service on its line of railroad required approval
 of the County under C.R.S. § 30-28-127.
 
 
 ---------